UNITED STATES, Appellee,

v.

Peter A. CRUMLEY, Specialist Four,
U.S. Army, Appellant.

No. 62,205.

CM 8701960.

U.S. Court of Military Appeals.

Argued Jan. 11, 1990.

Decided Sept. 6, 1990.

For Appellant: *Captain Robin K. Neff* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Thomas A. Sieg* (on brief); *Captain Lida A. S. Savonarola.*

For Appellee: *Captain Jonathan F. Potter* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Gary L. Hausken* (on brief); *Lieutenant Colonel Gary F. Roberson.*

*Opinion of the Court*

EVERETT, Chief Judge:

Specialist Four Peter A. Crumley was tried by a general court-martial composed of officer and enlisted members at Fort Hood, Texas, on August 28, 1987. He was convicted of one specification of conspiracy to distribute cocaine and two specifications of distribution of cocaine, in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 USC §§ 881 and 912a, respectively. His sentence included a bad-conduct discharge, 5 years' confinement, forfeiture of $550 pay per month for 60 months, and reduction to Private E-1. The convening authority approved appellant's sentence, and the Court of Military Review affirmed the findings and sentence in an

unpublished opinion. We then granted review to consider this issue:

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO INSTRUCT THE MEMBERS ON THE ELEMENT OF KNOWLEDGE REQUIRED FOR A FINDING OF WRONGFUL DISTRIBUTION OF A CONTROLLED SUBSTANCE.

I

Crumley was charged with conspiring with his wife Mary during March 1987 to distribute "cocaine to military and civilian personnel." In addition, he was alleged to have "wrongfully distribute[d] approximately 2.6 grams of cocaine ... to a known soldier" at or near Killeen, Texas, on or about 13 March 1987, and to have "wrongfully distribute[d] approximately 1.8 grams of cocaine ... to a known soldier" at or near Killeen, Texas, on or about 29 April 1987.

The Government's case was based on the testimony of two witnesses: Special Agent Jorif, an undercover Criminal Investigation Command (CID) Agent, and Private First Class Humes, a "registered source." Humes testified that "one day at work" Crumley "told me about some parties that him and his wife use to have and he had some dudes that got high there and was acting crazy, so I asked him about could he—he knew a guy that sold drugs so I asked him could he get a package for me and the special agent I was working with."

When Crumley answered in the affirmative, Humes negotiated with Crumley to buy some drugs. To this end, he and Jorif went to appellant's house on March 13, 1987. After they had sat down, Crumley picked up a VCR remote and that was a package under it with a white powdery substance in it. I picked up the package because it was closer to me and handed it to Jorif.

After examining the package, Jorif paid $275 for it. Humes had seen Mary Crumley in the house but she had "not really" been "involved" in this purchase.[1] Jorif had asked Ms. Crumley "about getting more packages from her and they just said there wouldn't be no problem, both of them, him and his wife said that there wouldn't be no problem."

Special Agent Jorif's testimony about the transaction on March 13 conformed to the account given by Humes. Jorif also stated that on April 27, 1987, he had returned to the Crumley residence and asked whether appellant "would be able to obtain another package for me." Crumley replied "that it wouldn't be any problem but that I needed to come back the next day to do so."

The next day Jorif returned, and Crumley asked his wife "whether she knew of some individual where she could make a purchase of cocaine." Jorif "provided" appellant "$250.00 in CID funds which he subsequently transferred to his wife. She subsequently departed the area." Initially, Ms. Crumley "stated that she was unable to make contact with anyone that could provide the cocaine," and she returned the money to Jorif.

The following day Jorif returned to the Crumley residence, where appellant and his wife were having dinner. When Jorif asked Crumley "could he go ahead and make that run for me or obtain the cocaine for me ... he said well you need to deal with her." Jorif gave Ms. Crumley $250.00; and ultimately she gave him a packet which contained cocaine.

To complement the testimony of Humes and Jorif, the Government offered laboratory reports which showed that the two packages that Jorif had received—one from Crumley and the other from his wife—contained cocaine. The Government then rested.

Crumley testified in his own defense that the prosecution witnesses were lying and that he had never conspired with his wife to distribute cocaine on either day in question. According to him, his family had been at his home for dinner on March 13,

---

1. However, when Humes first talked to Crumley at work, appellant told him "that he had to get in contact with his wife to ensure that we could get the package."

1987, when the first transaction was allegedly underway. At the time of the second distribution, he had been elsewhere.

Members of his family corroborated his account. Moreover, Mary Crumley, his wife, testified that, although she had been involved in drug transactions with Humes and Jorif, she had acted alone, and her husband had not known what she was doing. The Government offered rebuttal evidence.

In his instructions on wrongful distribution, the military judge explained that, to be punishable, the distribution must be "wrongful" and that it "is wrongful if it is without legal justification or authorization." Also, he advised the members that, as to the specification alleging wrongful distribution on April 29, "the Government [was] using the theory of aiding and abetting"; and that "[a]n aider or abettor must knowingly and willfully participate in the commission of the crime as something that he wishes to bring about and must aid, encourage, or incite the person to commit the criminal act."

As to the conspiracy charge, the judge instructed that the elements of the offense were "an agreement" between Crumley and his wife to distribute cocaine and the performance by Crumley of an overt act alleged in the specification—namely, that "he maintained contact with suppliers of cocaine for the purpose of bringing about the object of the agreement ... to distribute cocaine to military and civilian personnel."

## II

■ The military judge did not specifically instruct the court members that knowledge on the part of the accused was an element of wrongful distribution. Relying on *United States v. Mance*, 26 MJ 244 (CMA), *cert. denied*, 488 U.S. 942, 109 S.Ct.

367, 102 L.Ed.2d 356 (1988), and *United States v. Brown*, 26 MJ 266 (CMA 1988), appellate defense counsel maintain that this omission was fatal.

In *Mance* we held that, in a prosecution for use or possession of controlled substances, the Government must prove that the accused knew of both the presence and the character of the controlled substance. We affirmed Mance's conviction because the military judge had caused the members to know, either expressly or by indirection, that they must find that Mance both knew the substance was present and knew of its contraband nature in order to find him guilty. On the other hand, in *Brown*, where the prosecution's case at a contested trial rested almost entirely on positive results of urinalysis, we reversed the conviction because "the military judge made no mention at all of the need to find any aspect of knowledge in order to convict." 26 MJ at 267.

■ The offense of wrongful distribution must be treated in the same manner. In the first place, wrongful possession is a lesser-included offense of wrongful distribution,[2] and it would be anomalous to hold that knowledge was an element of the lesser-included offense but not of the greater offense. Secondly, in Federal prosecutions for wrongful distribution under 21 USC § 841(a)(1), the Government must prove beyond a reasonable doubt the defendant's knowledge and intent to distribute;[3] and although the language of Article 112a of the Uniform Code of Military Justice is less specific than its counterpart, we do not believe Congress intended that a servicemember could be subjected to the severe penalties imposable for wrongful distribution unless the Government proved knowledge on his part.

---

**2.** "'Distribute' means to deliver to the possession of another." Para. 37c(3), Part IV, Manual for Courts–Martial, United States, 1984.

**3.** *United States v. Moreno–Hinojosa*, 804 F.2d 845 (5th Cir.1986); *United States v. Samad*, 754 F.2d 1091 (4th Cir.1984); *United States v. Freeze*, 707 F.2d 132, 135 (5th Cir.1983); *United States v. Young*, 655 F.2d 624 (5th Cir.1981); *United States v. Jones*, 543 F.2d 627 (8th Cir.1976), *cert. denied*, 429 U.S. 1051, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977).

■ Although complete absence of an instruction on an element of an offense normally requires reversal,[4] we recognized in *Mance* that a harmless-error analysis was permissible if, under the instructions that were given, the members could not have found the accused guilty without finding that the element of knowledge was present.

Crumley was found guilty of conspiring with his wife to wrongfully distribute cocaine. In instructing the court members as to the conspiracy charge under Article 81 of the Code, the military judge should have explained the elements of the offense which was the object of the conspiracy. Thus, to be flawless, the military judge should have advised the court members that Crumley and his wife agreed to distribute substances which they knew were controlled.

However, the judge's instructions on "agreement" as an element of conspiracy were sufficient to make it clear to the court members that appellant and his wife both had to be aware that the substances they were agreeing to distribute were contraband. The failure to be more explicit about knowledge as an element of wrongful distribution was harmless error as to this charge. *Cf. Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *United States v. Mance, supra.*[5]

With respect to the distribution of cocaine on April 29, the prosecution proceeded against Crumley on a theory that he had aided and abetted his wife, who was the principal in the distribution. In this connection, the judge instructed that, to be guilty, appellant must have "knowingly" participated with his wife in the sale to Jorif. When we look at the instructions as a whole, it seems clear that the court-martial members would have believed that they could convict appellant only if they found beyond a reasonable doubt that he knew that his wife was distributing the packet of cocaine to Jorif and that she also was aware that it was cocaine.[6]

The remaining specification concerns the distribution on March 13, 1987. In this instance, Crumley testified and offered corroborating evidence from family members that he had not been present for any transaction with Jorif and Humes. In short, he claimed that the prosecution witnesses were lying.

Thus, the court members were confronted with a clear issue of credibility. If they accepted the prosecution version of the events, Crumley distributed cocaine with full knowledge of the contraband nature of the substance he was delivering to Jorif. Unlike *United States v. Brown, supra*, where the prosecution for wrongful use was based on a positive urinalysis and the possibility existed that the accused had ingested a drug without realizing that he had done so, here, if Crumley distributed cocaine to Jorif on March 13, 1987, he did so with full knowledge. On the other hand, if the defense version was believed, Crumley was not present for any drug transaction and could not have innocently delivered a package to Jorif.

There was no middle ground—no possibility that appellant had innocently delivered to Jorif a controlled substance of whose presence or nature he was unaware. Under these circumstances—and taking into account the instructions on knowledge given directly or indirectly for the other offenses charged—we conclude that the failure to instruct more explicitly on knowl-

---

4. Reversal might not be mandated if, for example, the accused has testified and has judicially admitted the facts which established the element as to which an instruction was omitted or if he has pleaded guilty to a lesser-included offense which contains an element omitted in the instructions.

5. The situation here is somewhat parallel to that presented in *United States v. Bryant*, 30 MJ 72 (CMA 1990), where, in a conspiracy prosecution, a specification was not fatally defective because of a failure to allege specifically that the distribution of drugs which was the object of the conspiracy was "wrongful."

6. If appellant had induced or caused his wife to distribute cocaine to Jorif but she had not realized the nature and character of the contents of the package being delivered—which, of course, was not the scenario in the present case—appellant would nonetheless have been criminally liable for wrongful distribution as a principal. *Cf. United States v. Varraso*, 21 MJ 129 (CMA 1985), *cert. denied*, 475 U.S. 1124, 106 S.Ct. 1645, 90 L.Ed.2d 190 (1986).

edge regarding this offense was harmless. *Rose v. Clark* and *United States v. Mance,* both *supra.*

III

The decision of the United States Army Court of Military Review is affirmed.

COX and SULLIVAN, JJ., concur.