200

UNITED STATES, Appellee,

v.

Rudolph SMITH, Staff Sergeant
U.S. Army, Appellant.

No. 66,360.
CM 9001765.

U.S. Court of Military Appeals.

Argued Nov. 14, 1991.
Decided May 11, 1992.

For Appellant: *Captain Mark L. Toole* (argued); *Colonel Robert B. Kirby, Major Michael J. Kelleher, Captain Emmett G. Wells* (on brief); *Lieutenant Colonel Russell S. Estey* and *Captain Brian D. Bailey.*

For Appellee: *Captain Marcus A. Brinks* (argued); *Colonel Dayton M. Cramer and Major Thomas E. Booth* (on brief); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Maria C. Fernandez.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

On June 21, 1990, appellant was tried at Fort Ord, California, by a special court-martial consisting of officer and enlisted members. Contrary to his pleas, he was convicted of wrongfully using cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The members sentenced him to a bad-conduct discharge and reduction to the grade of Private E-1. The convening authority approved this sentence, and the Court of Military Review, in a short-form decision over Judge Johnston's vigorous dissent, affirmed the findings and sentence on February 19, 1991.

We granted review on two issues:

I

WHETHER THE MILITARY JUDGE ERRED BY ALLOWING SERGEANT WARREN TO TESTIFY IN REBUTTAL.

II

WHETHER THE MILITARY JUDGE ERRED TO APPELLANT'S SUBSTAN-

TIAL PREJUDICE BY FAILING TO COMPLETELY INSTRUCT THE MEMBERS ON THE PERMISSIBLE INFERENCES OF KNOWLEDGE AND WRONGFULNESS IN A DRUG–USE CASE WHERE THE DEFENSE OF "INNOCENT INGESTION" HAD BEEN RAISED.

We hold that no plain error occurred in this case on the grounds asserted above. *See United States v. Holt*, 33 MJ 400, 409–10 (CMA 1991); *United States v. Fisher*, 21 MJ 327 (CMA 1986).

At trial, the Government introduced in evidence a laboratory report and a stipulation of fact that appellant's urine had tested "Positive for the metabolite *Benzoylecgonine*" in the amount of 1218 nanograms. The stipulation further provided that the Department of Defense standard for a positive sample was more than 150 nanograms and that, accordingly, appellant's sample showed the ingestion of cocaine. Appellant denied knowingly using cocaine and sought to refute this charge by presenting evidence suggesting his ingestion of this substance was without the requisite knowledge. To this end, he testified that he drove a taxi during off-duty hours and that his passengers often smoked cigarettes. He claimed that he sometimes borrowed cigarettes from them and smoked with them, although he could not recall experiencing any unusual physical effects from cigarettes passengers had given him. Appellant also testified that he handled coins and paper money when he drove the cab.

Dr. David Kuntz, a forensic toxicologist, then testified as an expert witness for the defense. He stated that he could not rule out the possibility that appellant's positive urine test for cocaine resulted from directly or indirectly inhaling smoke from a passenger's cocaine-laced cigarette or from handling currency with cocaine on it. However, he conceded that no scientific studies existed for the passive inhalation of smoked cocaine as existed for the passive inhalation of smoked marijuana.

Special Agent Warren was then called by the Government in rebuttal. The record states:

Q. Sergeant Warren, how long have you been a narcotics investigator here at Fort Ord?

A. I've been here at Fort Ord for just under two years.

Q. Okay. Is your appearance required as part of your duties?

A. For right now, yes, it is, sir.

Q. Are you an undercover agent as well?

A. Yes, sir, I am.

Q. Okay, thank you. How long have you been a sergeant for?

A. For two and a half years, sir.

Q. Thank you. In your job as a narcotics investigator, do you ever come in contact with persons who deal or use cocaine?

A. Yes, sir, I do.

Q. How often?

A. Daily, sir.

Q. Have you ever had occasion to handle cocaine?

A. Yes, sir.

Q. Has anyone ever smoked cocaine in your presence?

A. Yes, sir.

Q. In what type of areas have they done this?

A. I've been in crack houses where several people were smoking cocaine; I've been in cars, pickups where people are smoking cocaine, several different areas.

Q. Have you ever handled money during drug transactions?

A. Yes, sir, I have.

Q. Sergeant Warren, have you ever tested positive for the use of cocaine?

A. No, sir, I haven't.

TC: Thank you. No further questions.

MJ: Defense, cross?

DC: I have no questions, Your Honor.

## EXAMINATION BY THE MILITARY JUDGE

Q. Let me ask you one question, Sergeant Warren. If someone is smoking crack cocaine, can you tell by the odor?

A. Yes, sir, I can.

Q. It's distinctive?

A. It's a very distinct odor, sir.

MJ: All right. I have nothing else. Anything further, either counsel?

DC: Yes, I have a follow-up, Your Honor.

## CROSS-EXAMINATION

Questions asked by the DC [Cpt Loxley]:

Q. If cocaine were laced into a regular cigarette, would the regular cigarette smoke cover up the ordinary odor of cocaine?

A. I've never been able to tell, sir. I wouldn't—*I've never been around anybody, per se, that said they were smoking cocaine from a cigarette and if they were I didn't notice it.*

Q. Are you aware that that occurs?

A. I'm sorry?

Q. *Are you aware that people do lace regular cigarettes with cocaine?*

A. *Yes, sir, I am.*

DC: I have nothing further.

MJ: Anything further?

TC: No, sir.

MJ: Questions by the court? [negative response.] All right. Thank you very much, Sergeant Warren. You're excused.

[The witness was excused and withdrew from the courtroom]

Anything further, government?

TC: No, sir.

MJ: Surrebuttal, defense?

DC: No, Your Honor.

MJ: All right. Any witness by the court desired to be called or recalled in this case? [negative response.]

(Emphasis added.)

## I

The possibility of appellant's passive inhalation of cocaine was one of the critical issues in this case. *Cf. United States v. Harper,* 22 MJ 157, 163 (CMA 1986). The defense proffered the expert testimony of Doctor Kuntz that, under the circumstances related by appellant, a positive urinalysis result by this method of ingestion was possible. The Government then called Sergeant Warren in rebuttal. He asserted that he was often exposed to drug smoke and residue and never had a positive urine test.

Appellant now complains that Sergeant Warren was not qualified to give this testimony and that scientific opinions postulated or implied therein lacked a proper empirical basis. *See* Mil.R.Evid. 702, Manual for Courts-Martial, United States, 1984. *See generally United States v. Mance,* 26 MJ 244, 248 (CMA), *cert. denied,* 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988). Assuming this testimony surmounted these hurdles, appellant further asserts that this testimony should have been barred because of its low probative value and substantially unfair prejudicial effect. *See* Mil.R.Evid. 403.

■■■ We find these arguments unpersuasive for several reasons. First, appellant at trial did not object to the challenged testimony of Sergeant Warren on any grounds. Assuming all the above objections were not waived (*see* Mil.R.Evid. 103(a)), a contention of undue prejudice in this context is difficult to accept. *See United States v. Sparrow,* 33 MJ 139, 141 (CMA 1991). Second, defense counsel attacked Sergeant Warren's testimony in his closing arguments for most of the reasons noted above and also obtained an important concession from this government witness as to the practice of inserting cocaine in cigarettes. Fairness does not dictate that appellant have it both ways. *See United States v. Holt,* 33 MJ 400, 406 (CMA 1991); *United States v. Talbert,* 33 MJ 244, 247 (CMA 1991). Third, a criminal drug investigator might in some circumstances be qualified to give expert testimony on the physical characteristics and identification of contraband drugs. *See United States v.*

*Tyler,* 17 MJ 381, 385 (CMA 1984); *United States v. Johnson,* 575 F.2d 1347, 1360–61 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979). *See generally* 2 Wigmore, *Evidence* § 457 at 569–72 (Chadbourn rev.1979). The admission of Sergeant Warren's testimony thus was not egregious error. Finally, the members were not instructed that Sergeant Warren was an expert, and his testimony fit within the equivocations expressed by the defense expert himself.[1] We find that no plain error existed in these circumstances. *See generally* Mil.R.Evid. 103(d).

## II

The other issue raised by appellant on this appeal challenges the instructions given by the military judge to the members prior to findings. Appellate counsel argue that these instructions were so inadequate that the members were in effect invited to ignore the defense evidence of innocent ingestion and presume appellant's ingestion was knowing and conscious. The dissenting judge on the Court of Military Review more clearly articulated purported defects in these instructions. First, he asserted that the judge's instructions did not clearly delineate the two types of knowledge required for conviction of a drug-possession charge under Article 112a. *See United States v. Crumley,* 31 MJ 21, 23 (CMA 1990). Second, the judge failed to instruct the members that the element of wrongfulness required to be proven by statute included knowledge of the drug's nature as contraband. *United States v. Ford,* 23 MJ 331, 336 (CMA 1987). *See United States v. Mance,* 26 MJ at 254 and 256. Third, the judge failed to expressly instruct the members that they could not draw the permissive inference of wrongfulness including knowledge unless they disbelieved beyond a reasonable doubt appellant's contrary evidence.

Article 51(c), UCMJ, 10 USC § 851(c), and RCM 920(e)(1), Manual, *supra,* both provide that a military judge shall instruct the members of a court-martial on the elements of a charged offense. RCM 920(e)(7) also provides that instructions on findings shall include:

> Such other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or which the military judge determines, sua sponte, should be given.

The Discussion of this Manual provision further states: "Other matters which may be the subject of instruction in appropriate cases include: *inferences* ..." (Emphasis added.) In light of the above, it is no surprise that this Court has directed military judges to provide clear instruction to the members concerning use of urinalysis evidence and the permissible inference of wrongfulness in drug cases. *United States v. Harper,* 22 MJ at 164.

We are also aware, however, that court-martial procedural rules permit counsel to request specific instructions from the military judge. RCM 920(c). In this regard, we note that the military judge has substantial discretionary power. *See* RCM 920(a), and RCM 920(c), Discussion. Moreover, we note that RCM 920(f) provides:

> (f) *Waiver.* Failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error. The military judge may require the party objecting to specify in what respect the instructions given were improper. The parties shall be given the opportunity to be heard on any objection outside the presence of the members.

Accordingly, absent plain error, we are generally not inclined to reverse a case where additional instructions are belatedly proposed by the defense for the first time on appeal. *United States v. Bradley,* 28

---

1. Sergeant Warren, the narcotics investigator, was not expressly called an expert witness by the prosecution when he testified in rebuttal. However, subsequent to this testimony, the military judge and trial counsel each indicated that they considered him an expert of some undelineated type. Defense counsel made no response at this time either.

MJ 197, 202 (CMA 1989); *United States v. Fisher*, 21 MJ 327 (CMA 1986); *cf. United States v. Rowe*, 11 MJ 11, 12 (CMA 1981).

■ In this regard, we note that the military judge informed counsel at this court-martial that "I will advise the court of the elements of the offense, of course, that they must find that he knowingly used cocaine" and "I am going to give the standard Mance instruction...." These pronouncements were made prior to the actual instruction to the members and during an Article 39(a)[2] session where counsel's opinions and proposals concerning special instructions were solicited. Defense counsel did not object at any time to the instructions as given or proffer any additional instructions to clarify or explain those proposed by the military judge. Accordingly, plain error must be shown to have occurred in this case.

Again, turning to the record, we note that the military judge did not simply inform the members that the prosecution was required to prove appellant knowingly used cocaine. He said:

There's two elements in this particular offense, the first element being that at some unknown location, between 14 October 1989 and 14 November 1989, the accused used cocaine, which is a controlled substance.

The second element is that the use by the accused was wrongful.

*Now use as described in the first element must be knowing and conscious. Use is knowing and conscious when the accused is aware of the presence of the substance at the time of its use. Unless you are satisfied beyond a reasonable doubt that the accused was aware that he was using a controlled substance, you may not find him guilty.*

(Emphasis added.) Clearly, the members were informed that knowledge was an element of this offense and that it extended to both the presence of a substance and its contraband nature.

In addition, the members were instructed on the permissive inferences of knowledge and wrongfulness and, specifically, that the latter inference might be drawn unless there was contrary evidence. The military judge said:

Now there is evidence in this case that a urinalysis test disclosed the presence of a metabolite of cocaine in the accused's urine. *If you find from the evidence, beyond a reasonable doubt, that the accused did, in fact, ingest cocaine, you may infer that the accused's use was knowing and conscious.* However, you are not required to draw this inference.

As noted in the second element, use of a controlled substance must be wrongful. Use is wrongful if there is no justification or authorization for it. *Use of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary.* However, you are not required to draw this inference.

(Emphasis added.)

Finally, these instructions did not stand alone. The military judge also said:

*The rule of reasonable doubt extends to every element of the offense.*

If, on the whole evidence, you are satisfied beyond a reasonable doubt of the proof of each and every element, you should find the accused guilty. On the other hand, if, on the whole evidence, you are not satisfied beyond a reasonable doubt of the proof of each and every element of the offense, you should acquit the accused.

You should bear in mind that only matters properly before the court as a whole may be considered. In weighing the evidence, you are expected to use your common sense and your knowledge of human nature and the ways of the world. *In the light of all the circumstances of the case, you should consider the inherent probability or improbability of the evidence and, keeping this in mind, you may properly believe one witness and disbelieve several witnesses whose testimony is in conflict with that of the one.*

---

2. Uniform Code of Military Justice, 10 USC § 839(a).

The final determination as to the weight of the evidence and the credibility of the witnesses in this case rests solely upon you members of the court.

(Emphasis added.)

These instructions viewed as a whole convince us that no miscarriage of justice occurred in this case. Admittedly, the doctrinal sophistication exhibited by Senior Judge Everett in his opinions in *United States v. Mance*, 26 MJ 244 (CMA 1988); and *United States v. Crumley, supra,* and the per curiam opinion in *United States v. Brown*, 26 MJ 266 (CMA 1988), is lacking. However, they did reasonably convey by implication to the members that, in deciding whether to draw *any* inference, they cannot ignore defense evidence, and their judgment in this regard must be made on the basis of the reasonable-doubt standard favoring an accused. *See United States v. Bradley, supra. See generally United States v. Ford*, 23 MJ at 335. Accordingly, even a finding of error in this context is not warranted. *See Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). *Cf. Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

Judges CRAWFORD, GIERKE and WISS did not participate.

EVERETT, Senior Judge (concurring in part and in the result):

As to admissibility of the testimony of Sergeant Warren, I can concur only on the ground of waiver by a defense failure to object. As Judge Johnston explained in his dissenting opinion in the Court of Military Review, this rebuttal testimony should have been excluded—whether Warren was treated as an expert or as a lay witness: In either event, it lacked a proper foundation, because there was no evidence as to when, how often, and under what circumstances Sergeant Warren's urine had been tested or as to the time interval between his exposure to passive inhalation and any later tests of his urine specimen. *See* Mil. R.Evid. 701 and 702, Manual for Courts-Martial, United States, 1984. Therefore, it is impossible to infer logically from his experience that passive inhalation will not cause positive results on a subsequent test of a urine specimen.

Unlike Judge Johnston, however, I have concluded that the error in admitting this testimony was not so great as to warrant relieving the defense from its waiver by failure to object. See Mil.R.Evid. 103(a)(1). Furthermore, this omission by defense counsel does not suffice to demonstrate ineffective assistance of counsel under the test prescribed by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also United States v. Scott*, 24 MJ 186 (CMA 1987). Therefore, the evidentiary error does not require reversal of the findings of guilty. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a).

In his dissent below, Judge Johnston properly criticized the instructions given by the military judge because of their failure to specify the types of knowledge that are required for conviction of wrongful use or possession of a controlled substance. *See United States v. Mance*, 26 MJ 244 (CMA), *cert. denied*, 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988). I agree fully that a military judge should explain that the court members must be convinced beyond a reasonable doubt not only that the accused knew of the presence of a substance, but also that he knew that this substance was controlled. However, if, as here, the military judge fails to make this distinction in explicit terms, defense counsel has some responsibility for objecting or proposing additional instructions. Absent such defense action, I usually will conclude—as I do in this case—that the defense believed that the instructions given as to awareness of the presence or use of a controlled substance adequately explained to the court members the dual aspect of the knowledge required for conviction.