**UNITED STATES, Appellee,**

v.

**Sergeant Christopher L. SPEER, 419–08–0534, United States Army, Appellant.**

**ACMR 9101380.**

U.S. Army Court of Military Review.

1 March 1993.

For Appellant: Captain Michael Huber, JAGC (argued); Captain Mark L. Toole, JAGC, Major Brian D. Bailey, JAGC USAR (on brief). Captain Robin L. Hall, JAGC (on brief).

For Appellee: Captain John P. Saunders, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Thomas E. Booth, JAGC USAR (on brief). Major Joseph C. Swetnam, JAGC.

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

GRAVELLE, Judge:

Pursuant to mixed pleas, the appellant was convicted by a military judge sitting as a general court-martial of failure to repair (three specifications), using cocaine, distribution of cocaine, and possession of marihuana, in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 912a (1982 and Supp. V 1987) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for one year and one day, forfeiture of all pay and allowances, and reduction to Private E1.

We must decide in this case whether the definition of "distribution" of drugs under Article 112a, UCMJ, is broad enough to encompass acts of an aider and abettor occurring only after the actual transfer of the drugs. Upon reconsideration of our original opinion in this case, we believe our original opinion incorrectly narrowed the definition. We now hold that "distribution" includes acts that aid and abet the transaction even after the actual transfer of the drugs.

In his brief and in oral argument, counsel for the appellant asserted that the evidence was insufficient to convict the appellant for distributing cocaine because the drug *distribution* was actually complete prior to his involvement in accepting money for the drugs on behalf of the distributor. In our original opinion issued on 18 December 1992, we agreed with the appellant's assertions, based on our review of military law as applied to the novel facts of this case.

On 7 January 1993, the government petitioned this court to reconsider its decision, and in the alternative to reconsider the decision *en banc*. The suggestion to reconsider the decision *en banc* was not favorably considered. However, we deem it appropriate to reconsider our previous decision.

In its petition for reconsideration, the government asserts that our interpretation of "distribution" is too narrow, and that

the appellant's actions in accepting the money after the actual transfer of the drugs is sufficient to constitute aiding and abetting a distribution. The government asks us to consider civilian federal law and precedent regarding "distribution" as it relates to aiding and abetting distribution of drugs. The government argues that "distribution" encompasses all aspects of "sale." In opposition, appellate defense counsel point out differences in the definitions of "distribution" between the Manual for Courts–Martial and federal statutes criminalizing drug distribution.

We agree with the government that it is appropriate to consider federal civilian law [1] inasmuch as this court has recognized that the development of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq. [hereinafter the Act], is closely related to the development of Article 112a, UCMJ, and that the legislative history of Article 112a specifically refers to this Act. *See United States v. Dallman*, 32 M.J. 624 (A.C.M.R. 1991), *rev'd in part on other grounds*, 34 M.J. 274 (C.M.A.1992). *See also United States v. Crumley*, 31 M.J. 21 (C.M.A. 1990), wherein the Court of Military Appeals cited as authority the standards of 21 U.S.C. § 841(a)(1) in determining that knowledge was a necessary component of distribution of drugs under Article 112a, UCMJ. Finally, while the definitions may be worded differently, we find nothing in the military definition of "distribution" which differs substantially from the federal definition.

## I. Facts

On 5 February 1991, a member of the local military police drug suppression team telephoned Mrs. C, a known drug dealer, at her off-post home and requested to buy sixty dollars worth of cocaine. She told him to wait forty-five minutes and then come to her house. The police agent did as instructed. When he arrived at Mrs. C's house, she met him at the door, showed him into the living room, and instructed

him to sit down. The appellant was present in her living room. In the appellant's presence, the agent again asked Mrs. C if he could buy sixty dollars worth of cocaine. The appellant, who was sitting on a couch a few feet away watching television, did not participate in this discussion. Mrs. C went into her kitchen to get the cocaine. While she was gone, the appellant provided the agent with a beer and made "small talk" about the Army. Mrs. C returned shortly with the cocaine and handed it to the undercover agent. She then returned to the kitchen. The agent ostensibly fumbled in his pocket for the sixty dollars, but in reality he was also activating a silent alarm alerting waiting agents that the transaction was completed. Because Mrs. C had returned to the kitchen, the agent handed the money to the appellant. The appellant accepted the money and, as he was counting it, the appellant verified that sixty dollars was the correct amount by yelling to Mrs. C in the kitchen. The appellant placed the money in his shirt pocket. After more "small talk," the agent started to leave the house. As the agent was departing, the police, alerted by the silent alarm, raided the house and apprehended the occupants.

At trial, the government presented the testimony of the police agent, who described the events, above. When closely questioned by the military judge why he handed the money to the appellant, the agent replied "Because he was there," and "to complete the transaction." The agent also stated that he had no reason to believe that the appellant was involved in the transaction. The agent also testified that the appellant had been present, but did not participate, in one of three prior drug purchases he had made from Mrs. C at her house. The defense rested without presenting evidence on this particular charge.

## II. Military Law

At the outset, we note that the only theory of criminal liability available to the government under the facts set out above is that the appellant is guilty as a principal,

**1.** In addition, we have searched for state court precedents addressing this issue and have found none.

not as the perpetrator, but as an aider and abettor to the distribution.[2]

In order to affirm the appellant's conviction, we must be satisfied that the evidence is both legally and factually sufficient to show that the appellant aided and abetted the distribution of cocaine in this case. The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and having made allowances for not personally having observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

"[T]o be guilty [as an aider and abettor,] the person must: (i) Assist, encourage, advise, instigate, counsel, command, or procure another [person] to commit, or assist, encourage, advise, counsel, or command another in the commission of the offense; and (ii) Share in the criminal purpose [or] design." MCM, Part IV, para. 1b(2)(b). The mere inactive presence at the scene of a crime is insufficient to make a person a principal. *Id.*, para. 1b(3)(b). *See also United States v. Nakamura*, 21 M.J. 741 (N.M.C.M.R.1985) and cases cited therein.

Congress added Article 112a to the Uniform Code of Military Justice in 1983:

[T]o eliminate the confusion, disruption, and disparate treatment of some drug offenses among the services in the wake of *United States v. Courtney*, 1 M.J. 438 (C.M.A.1976); *United States v. Jackson*, 3 M.J. 101 (C.M.A.1977); *United States*

*v. Hoesing*, 5 M.J. 355 (C.M.A.1978); *United States v. Guilbault*, 6 M.J. 20 (C.M.A.1978); *United States v. Thurman*, 7 M.J. 26 (C.M.A.1979).

....

"Distribution" replaces "sale" and "transfer." This conforms with Federal practice, *see* 21 U.S.C. § 841(a), and will simplify military practice by reducing pleading, proof, and associated multiplicity problems in drug offenses. *Evidence of sale is not necessary to prove the offense of distributing a controlled substance.... Evidence of sale is admissible, of course, on the merits as "part and parcel" of the criminal transaction* (*see United States v. Stokes*, 12 M.J. 229 (C.M.A.1982); *cf. United States v. Johnson*, [481 F.2d 645 (5th Cir.1973) ]; *see also* Mil.R.Evid. 404(b))....

MCM, analysis, app. 21, at A21–95 (emphasis added; some case citations omitted). *See also United States v. Ticehurst*, 33 M.J. 965, 966 n. 3 (N.M.C.M.R.1991).

Following the changes made to the Uniform Code of Military Justice in 1983, the President approved a new Manual for Courts–Martial in 1984 reflecting these changes. Under the new Manual, in order to be guilty of the offense of distribution of a controlled substance under Article 112(a), the government must show beyond a reasonable doubt that (1) the accused distributed a certain amount of a controlled substance, such as cocaine, and (2) the distribution was wrongful. MCM, Part IV, para. 37(b)(3). "Distribute" means to deliver to the possession of another. *Id.*, para. 37(c)(4). "Deliver" means the actual, constructive, or attempted transfer of a drug or other substance. *Id.* In order to prove that the accused effected the distribution of a controlled substance, the government must show active, constructive, or attempt-

---

**2.** Article 77, UCMJ, defines "principal" as (1) one who commits an offense, or (2) one who aids and abets an offense. The Manual classifies one who actually commits an offense as a "perpetrator." Manual for Courts–Martial, United States, 1984, Part IV, para. 1b(2)(a) [hereinafter MCM]. Even though the appellant was also charged but acquitted at trial of conspiracy to distribute drugs, and even though the overt act alleged in the conspiracy specification was that

the appellant accepted the sixty dollars from the agent, he may nonetheless be found guilty of distribution. A finding of not guilty of conspiracy to distribute drugs is not inconsistent with aiding and abetting the distribution. MCM, Part IV, para. 5c(9); *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States v. Nuckols*, 20 C.M.R. 471 (A.B.R. 1955). *See generally United States v. Smith*, 4 M.J. 809 (A.F.C.M.R.1978).

ed delivery by the accused to another. *Id.,* para 37c; *United States v. Frazier,* 30 M.J. 1231 (A.C.M.R.1990). In order to be guilty as an aider and abettor to the distribution of drugs, an accused's participation with the perpetrator must be knowing and willful. *Crumley,* 31 M.J. at 23.

## III. Controlled Substances Act

21 U.S.C. § 802(11) of the Act defines "distribution" as "deliver[ing] (other than by administering or dispensing) a controlled substance or actual chemical." "Delivery" refers to the actual, constructive, or attempted transfer of a controlled substance or listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(8). The federal courts, citing congressional intent, have generally construed "distribution" in broad terms to include all phases of the transaction from beginning to end. *See, e.g., United States v. Acosta,* 963 F.2d 551, 557 (2d Cir.1992); *United States v. Catchings,* 922 F.2d 777, 779 (11th Cir.1991); *United States v. Lechuga,* 888 F.2d 1472, 1478 (5th Cir.1989); *United States v. Brunty,* 701 F.2d 1375, 1380–81 (11th Cir.), *cert. denied,* 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983), *cited in United States v. Johnson,* 26 M.J. 686, 687 n. 2 (A.C.M.R.1988).

▮ To prove that an accused was an aider and abettor, the government must show that a substantive offense was committed, that the person associated himself with the criminal venture, and that the person committed some act which furthered the crime. *United States v. Perez,* 922 F.2d 782, 785 (11th Cir.1991); *United*

*States v. Pareja,* 876 F.2d 1567, 1570 (11th Cir.1989). In addition, the government must show that the aider and abettor had the same unlawful intent as the actual perpetrator. *Perez,* 922 F.2d 782; *United States v. Hamblin,* 911 F.2d 551, 557–58 (11th Cir.1990). Proof that the aider and abettor shared the perpetrator's essential criminal intent may be inferred from the facts and circumstances. *United States v. Campa,* 679 F.2d 1006 (1st Cir.1982). The mere presence at the scene of illicit drug activity is insufficient to prove guilt. *See, e.g., United States v. Soto,* 716 F.2d 989 (2d Cir.1983) (mere presence for three weeks in an apartment used as a drug processing mill was not sufficient to establish guilt of conspiracy to distribute narcotics). As with military law, in order to constitute "distribution," civilian federal law does not require that the drug distributor receive money in exchange for the drugs. *United States v. Coady,* 809 F.2d 119, 124 (1st Cir.1987); *United States v. Edmonds,* 765 F.Supp. 1112 (D.C.Cir.1991); *United States v. Workopich,* 479 F.2d 1142, 1147 n. 6 (5th Cir.1973).

▮ As a general proposition, a person cannot aid and abet a crime which has already been completed. *Roberts v. United States,* 416 F.2d 1216, 1221 (5th Cir. 1969).[3] We have found only one case involving an argument similar to that made by the appellant in the case before us. In *United States v. Coady,* Coady's defense counsel argued at trial that Coady's participation in a drug distribution occurred only after the transfer was complete.[4] Coady

---

3. In *Roberts,* the accused had accompanied a friend who passed counterfeit currency. When the counterfeit nature of the currency was discovered in a restaurant, the friend gave the remaining counterfeit currency in her possession to the accused and asked her to destroy it. The receipt and eventual destruction of the currency led to the accused's conviction as an aider and abettor to passing counterfeit currency. Upon review by the court of appeals, the conviction was set aside since the crime of passing counterfeit money had already been completed.

4. The facts presented by the government showed that Coady, accompanying a "friend," brought a manila envelope containing cocaine to a meeting in a parking lot of a restaurant and

handed it to an undercover police agent. Thereafter, the three men went into the restaurant. Inside the restaurant, the money for the drugs passed from the buyer to the seller "friend," who counted it and passed some of the money to Coady. During the meeting and prior to the money passing, Coady vouched for the quality of the drugs, said that drugs were in plentiful supply, and boasted about his connections with local police officials. Coady, however, testified that he had no idea what was in the manila envelope he gave to the undercover policeman outside the restaurant, that he delivered the envelope for his friend, the seller, that he wasn't aware of the transaction until later in the res-

was convicted of drug distribution and, on appeal, argued that the judge had failed to properly instruct on aiding and abetting after his counsel's argument focused on that issue. The appellate court found no error in the instructions as given. In *dicta,* however, the court opined that, even if Coady's testimony were believed, Coady could still be found guilty as an aider and abettor "for facilitating the financial climax of the deal." *Coady,* 809 F.2d at 124. The court observed:

> It would be both ironic and illogical to use Congress's expanded definitions of unlawful conduct (its criminalization of the broader inclusive acts of "distribution" and "dispensing," rather than the more restrictive act of "selling") to shrink the liability of those who aid and abet violators in ways that go beyond the statutory minima of the offense's requisite elements.

*Id.* at 124–25.

There is language in several other federal appellate opinions agreeing that acts occurring after the actual transfer of drugs can form the basis of criminal liability for actually distributing or for aiding and abetting drug distribution. *Perez,* 922 F.2d at 785–86; *Brunty,* 701 F.2d at 1381. *See also United States v. Orozco–Prada,* 732 F.2d 1076, 1080 (2d Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984) (money laundering after actual delivery of drugs is sufficient in proving a *conspiracy* to aid and abet drug distribution).

### IV. Analysis.

Having now considered the entire body of federal law, both military and civilian, and the intent of Congress in redefining the crimes, we are persuaded that our original definition of "distribution" was unduly restrictive.

■ We recognize that in the "normal" military case, an aider and abettor to drug distribution participates *prior to* or *during* the drug offense, by assisting, encouraging, advising, instigating, counselling, commanding, or procuring. *See, e.g., United States v. Tracy,* 33 M.J. 142 (C.M.A.1991);

*Crumley,* 31 M.J. 21; *United States v. Pritchett,* 31 M.J. 213 (C.M.A.1990); *United States v. Hill,* 25 M.J. 411 (C.M.A.1988); *United States v. Burroughs,* 12 M.J. 380 (C.M.A.1982). And, after having reviewed the federal precedents cited above, we agree with the general proposition that "distribution" of drugs does not necessarily end when the actual transfer occurs. Therefore an accused's activity *after* the actual delivery of drugs can be sufficient to show that an accused was an aider and abettor to the drug distribution.

■ In applying the law to the case before us, we find that under the circumstances of this case, the appellant's verification of the price of the drugs, accepting and counting the money, and putting it into his pocket was sufficient to permit a reasonable fact-finder to decide that the appellant was an aider and abettor to the distribution of cocaine. Further, we are ourselves now convinced beyond a reasonable doubt that the evidence supports the appellant's conviction beyond a reasonable doubt. We find that appellant acted with sufficient knowledge of the drug transaction, and that he associated himself with and shared in the enterprise, and intended to "facilitate the financial climax of the deal." *See Coady,* 809 F.2d 119.

We have examined the remaining error personally asserted by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find it to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge WERNER concur.

---

taurant when his friend told him about it and

asked him to "play along" in the conversation.