**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Carlos Manuel PEREZ,
Defendant–Appellant.**

No. 90–5195.

United States Court of Appeals,
Eleventh Circuit.

Jan. 30, 1991.

Miguel Caridad, AFPD, Miami, Fla., for defendant-appellant.

Dexter Lehtinen, U.S. Atty., Mayra Reyler Lichter, Linda Collins Hertz, Stephen Schlessinger, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and DYER, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this drug possession and distribution case, we affirm the appellant's convictions, under an aiding and abetting theory, even though the appellant did not directly participate in the substantive crimes on the dates they were committed.

## FACTS

In August, 1987, the Miami Metro–Dade Police Department sought and received authorization to intercept wire communications occurring over three land-line telephones located within the residence of Raul Plasencia. Because the officers believed Plasencia and others were using the phones in furtherance of cocaine trafficking, they sought and received authorization to intercept communications occurring over Plasencia's mobile or cellular telephones.

The electronic surveillance indicated that Plasencia headed a large-scale cocaine importation and distribution network. Carlos Perez and David Carrazana served in the organization's security detail conducting surveillance and counter-surveillance, safeguarding the physical well-being of the organization members, and intimidating and retaliating against those who threatened or posed a threat to the organization. Plasencia and Perez had been associates in Cuba, and Perez had accompanied Plasencia when Plasencia immigrated to the United States in 1979. Perez lived in a house nominally owned by Plasencia's sister, and was frequently in Plasencia's company.

Through intercepted conversations, the officers tracked the organization's activities. On September 7, 1987, suspecting an imminent sale of cocaine, the officers set up surveillance units in the vicinity of Plasencia's walled residence. A plainclothes detective sitting in an unmarked vehicle noticed someone drive slowly by in a van, peer into the detective's vehicle, and then return to the front gate of Plasencia's property. The van driver spoke with Perez, after which Perez hurriedly entered Plasencia's compound. Almost immediately thereafter, three individuals reemerged from the residence grounds and looked directly back towards the detective, who realized that his presence had been reported. The detective left the area. The officers then intercepted a call made by Plasencia's wife, Maria, to Perez discussing the report he had made of the suspicious vehicle. Perez stated that he and Carrazana had checked the neighborhood and had not found the suspected surveillance unit. After Maria instructed Perez to make another search of the surrounding area, and he told her that it still appeared safe, the Plasencias instructed Orlando Nunez, who was waiting in the Plasencias' home, to deliver ten kilograms of cocaine to Miguel Diaz, at Diaz's residence. Plainclothes officers arrived during the attempted sale at Diaz's residence, announced themselves, and seized the cocaine. The officers, however, did not make any arrests, creating the impression that they were either rival drug dealers or corrupt officers "ripping off" Nunez and Diaz. Maria later warned Nunez that Perez was upset and that "if he thinks that it was you [who helped steal the cocaine] ... there will be a war."

The next day, the officers used a similar deception to interrupt an attempted sale of cocaine by Carlos Veccio, a member of Raul Plasencia's organization. The buyer, who had previously paid for the cocaine, insisted that the loss be borne by Plasencia. Before meeting with the buyer, Raul Plasencia attempted to recover the cocaine. Plasencia called Perez and told him to meet

and bring a firearm.[1] With Perez and Carrazana in one vehicle and Plasencia in another, they drove around the area seeking to repossess the stolen cocaine or at least learn who had taken it. Perez reported to Plasencia that he noticed nothing out of the ordinary.

On September 14, 1984, the officers seized eighty-six kilograms of cocaine from Jesus Garcia, another member of Plasencia's organization. Plasencia made calls to have Perez or Carrazana meet him at a restaurant near Garcia's house. Plasencia intended to visit Garcia's residence, and he wanted Perez or Carrazana to join him. The following day, the officers observed Carrazana and Perez remove the contents from an apartment and place them in Perez's truck. Among the items removed were boxes containing packages identical in shape, size, and wrapping with the cocaine packages previously seized. The officers followed Perez and Carrazana as the truck left the apartment, but interdiction failed when Perez's evasive driving caused the officers to lose sight of the truck.

Eventually, Plasencia discerned the attempts by law enforcement officers to keep him under surveillance. The Plasencias informed Perez, among others, that the officers were preparing for arrests and instructed him to flee. Perez left the Miami area just before arresting officers arrived at his home. A search of his residence yielded several loaded firearms. In August, 1989, the officers located Perez living under an assumed name in Sarasota, Florida.

## PROCEDURAL HISTORY

On October 2, 1987, a federal grand jury indicted Perez on one count of conspiracy to possess cocaine with the intent to distribute it, and on three counts of possession of cocaine with the intent to distribute it. A jury convicted Perez on all four counts.

## CONTENTIONS

Perez contends that the evidence is insufficient to support his convictions on the three counts of possession with the intent to distribute cocaine.[2]

## ISSUE

The issue is: whether the government presented sufficient evidence to convict Perez for his participation in the substantive acts of possession with the intent to distribute cocaine.

## DISCUSSION

To determine whether sufficient evidence supports the convictions, we must view the evidence in the light most favorable to the prosecution and decide whether a reasonable fact finder could have reached a conclusion of guilt beyond a reasonable doubt. *United States v. Sanchez,* 722 F.2d 1501, 1505 (11th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984). The evidence need not be wholly inconsistent with every reasonable hypothesis except that of guilt. *United States v. Kelly,* 888 F.2d 732, 740 (11th Cir.1989).

Perez challenges the sufficiency of the evidence used to convict him of the three substantive counts of possession with the intent to distribute cocaine, under an aiding and abetting theory, which relate to the events of September 7, 8, and 14, 1987.[3]

1. The precise word used by Plasencia to signify a firearm was the Spanish word "caballo," which literally translates as "horse," but which Metro–Dade Police Sergeant Gonzalez testified was a slang term for a gun, or a "piece," in its closest English language equivalent.

2. Perez also contends that the district court abused its discretion by allowing a police sergeant to testify as to his understanding of the meaning of certain words and phrases used by the conspirators in the course of intercepted conversations, and that the district court erred in failing to suppress tape recordings intercepted from the Plasencias' telephones. We addressed those issues in the related case *United States v. Carrazana,* 921 F.2d 1557 (1991). In that case we held that the district court did not err in admitting the recorded conversations and that any error arising from the admission of the police officer's testimony was harmless. We reach the same conclusions in this case for the reasons stated in *Carrazana.*

3. Title 18 U.S.C.A. § 2 provides:
 (a) Whoever commits an offense against the United States or aids, abets, counsels,

Perez argues that because he committed no significant acts in connection with the crimes committed on those dates, and had no participation in the latter two offenses until after the cocaine had been seized and the violations presumably completed, he cannot be held responsible as an aider and abettor.[4]

■ To prove aiding and abetting, the government must show that a substantive offense was committed, that Perez associated himself with the criminal venture, and that Perez committed some act which furthered the crime. *See United States v. Pareja*, 876 F.2d 1567, 1570 (11th Cir.1989). The government need not show that Perez was present at the scene when the crime occurred, or that he was an active participant, but the government must show that Perez had the same unlawful intent as the actual perpetrators. *See United States v. Hamblin*, 911 F.2d 551, 557–58 (11th Cir. 1990). Further, the government need not show that Perez had knowledge of the particular means his principals employed to carry out the criminal activity. *See United States v. Broadwell*, 870 F.2d 594, 608 (11th Cir.1989).

■ Although Perez did not actually possess the cocaine involved in the illegal transactions, the government introduced substantial evidence concerning Perez's acts undertaken prior to the seizures indicating his intent to facilitate the transactions. Before the September 7, 1987 transaction, Perez acted as a sentry for Plasencia and actively conducted counter-surveillance. The delivery was only permitted to proceed after Perez and others had carefully searched the area and reported to Plasencia that the area was safe. This activity is sufficient to establish aiding and abetting for a substantive narcotics violation. *See, e.g., Pareja*, 876 F.2d at 1569–70 (de-

fendant's activity as street lookout during drug deal sufficient to sustain her conviction as an aider and abettor); *see also United States v. Pui Kan Lam*, 483 F.2d 1202, 1208 (2d Cir.1973) (evidence sufficient where jury could find that defendant "acted as a lookout ... and could thus interpret appellant's conduct as indicating concern about possible police surveillance...."), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974).

Likewise, the evidence reflects that before the September 8 and 14 seizures, Perez held himself ready to intervene in the event of an emergency, and his availability as an enforcer permitted those violations to proceed. On September 8, when Plasencia learned of the problem with Veccio's sale, he first called Perez. Plasencia instructed Perez to arm himself and report to Veccio's residence, where the buyer and Veccio were in tense confrontation over the loss of the cocaine. When difficulties were encountered, Perez was immediately available to secure the sale's proceeds and to recover the stolen contraband. The jury was entitled to find that Perez had specifically made himself available for this purpose. The same may be said of the events of September 14. After hearing that Garcia had been victimized, Plasencia's first order to Carrazana was to pick up Perez and to meet him near Garcia's house. Again, the jury was justified in finding that Perez was holding himself ready to provide security at a moment's notice. By standing ready in these instances, Perez aided and abetted the violations prior to the seizures because he was providing a service—the service of security and protection—intended to further the success of the drug venture.

■ Perez's argument is also based on the mistaken premise that one cannot be convicted of aiding and abetting the sub-

---

commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. (West 1969).

**4.** Perez does not challenge the accuracy of the aiding and abetting charge given to the jury by

the district court. In charging the jury, the court declined to give a *Pinkerton* instruction as requested by the United States. Accordingly, Perez's liability for the substantive offenses rests solely upon an aiding and abetting theory. *See United States v. Monaco*, 702 F.2d 860, 881 (11th Cir.1983).

stantive offense of possession of cocaine with the intent to distribute it once the principal no longer possesses the cocaine. Aiding and abetting encompasses activities intended to ensure the success of the underlying substantive crime, including those that take place after the delivery, or thwarted delivery, of the narcotics. *See United States v. Orozco–Prada,* 732 F.2d 1076, 1080 (2d Cir.) (one who launders the proceeds received following distribution of drugs may be held as an aider and abettor of substantive drug violations), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984); *accord United States v. Lignarolo,* 770 F.2d 971 (11th Cir.1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986). *See also United States v. Coady,* 809 F.2d 119 (1st Cir.1987) (one who makes assurances to the purchaser of narcotics concerning the quality and quantity of drugs previously delivered aided and abetted the previously completed distribution). In Perez's case, the presence of force or the threat of force, which is what Perez offered, was performed to ensure the success of the planned cocaine transactions.[5]

The evidence of Perez's activities on September 7, 8, and 14, 1987, whether considered before or after the seizures, was sufficient to sustain the three substantive count convictions. A reasonable jury could have concluded that Perez associated himself with Plasencia's efforts to possess and distribute cocaine on September 7, 8, and 14, 1987, and that by conducting surveillance and actively seeking the lost cocaine, Perez intended to bring about the successful completion of Plasencia's efforts.

## CONCLUSION

For the reasons stated above, we affirm the convictions.

AFFIRMED.

---

[5] We recognize that "[a] person cannot aid or abet a crime which has already been completed." *Roberts v. United States,* 416 F.2d 1216, 1221 (5th Cir.1969). In this instance, however,

Perez's actions were undertaken to ensure the success of a crime which had been temporarily foiled by the undercover police detectives' actions.