17 F.3d 1436
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ruben CALDWELL, Petitioner-Appellant,
v.
Dareld KERBY, Respondent-Appellee.
 No. 93-2072.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 23, 1994.
 
 ORDER AND JUDGMENT[1]
 Before BALDOCK, BARRETT, and McKAY, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner Ruben Caldwell challenges the district court's dismissal of his petition for a writ of habeas corpus under 28U.S.C. 2254. Caldwell was convicted by a jury of aiding and abetting the kidnapping of a woman.[2] He attacks this conviction on the basis that it was not supported by sufficient evidence and the conviction therefore violated his due process rights.[3] Adopting with some modification the findings of the magistrate judge, the district court agreed with the magistrate judge that there was sufficient evidence to support Caldwell's conviction and dismissed his petition.
 
 
 3
 We have jurisdiction under 28 U.S.C. 1291 and review a sufficiency-of-the-evidence claim de novo. Grubbs v. Hannigan, 982 F.2d 1483, 1486 n. 3 (10th Cir.1993). We conclude that Caldwell's contentions are unpersuasive and affirm.
 
 
 4
 The due process guaranteed by the Fourteenth Amendment requires that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof--defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316 (1979)(citing In re Winship, 397 U.S. 358 (1970)). In reviewing a sufficiency-of-the-evidence claim on habeas, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Thus, we cannot reweigh conflicting evidence, but must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs, 982 F.2d at 1487.
 
 
 5
 We review a sufficiency-of-the-evidence claim with explicit reference to the substantive elements of the crime as defined by state law, including statutory interpretations made by state courts. See Rael v. Sullivan, 918 F.2d 874, 875-76 (10th Cir.1990), cert. denied, 499 U.S. 928 (1991). As applicable here, New Mexico defines kidnapping as "the unlawful taking, restraining or confining of a person, by force or deception, with intent that the victim: ... (3) be held to service against the victim's will." N.M. Stat. Ann. 30-4-1. A person may be charged as an accessory to a crime if he aids and abets its commission, even though he does not directly commit the crime. Id. 30-1-13. New Mexico courts generally rely on the following description of what it takes to be liable as an aider and abettor:
 
 
 6
 The evidence of aiding and abetting may be as broad and varied as are the means of communicating thought from one individual to another; by acts, conduct, words, signs, or by any means sufficient to incite, encourage or instigate commission of the offense or calculated to make known that commission of an offense already undertaken has the aider's support or approval. Mere presence, of course, and even mental approbation, if unaccompanied by outward manifestation or expression of such approval, is insufficient.
 
 
 7
 Before an accused may become liable as an aider and abettor, he must share the criminal intent of the principal. There must be community of purpose, partnership in the unlawful undertaking.
 
 
 8
 State v. Ochoa, 72 P.2d 609, 615 (N.M.1937)(citations omitted).
 
 
 9
 In the light most favorable to the prosecution, the following facts were presented to the jury. In the afternoon of June 11, 1985, the victim, a twenty-year-old woman, left a medical clinic in Albuquerque and began walking towards a gas station to meet her parents. Caldwell and a co-defendant, Donald Trujillo, were riding in Caldwell's car. Trujillo was driving. As the victim was talking to friends in front of a bar, Caldwell and Trujillo pulled up and asked the victim if she wanted a ride. Though she knew neither Caldwell nor Trujillo, she accepted the offer and got in the car, sitting in the front seat between Trujillo and Caldwell. Trujillo said that before he could take her to the gas station, he had to stop at his mother's house and later at a friend's house to get money for gas. Several times the victim indicated that she wanted to get out of the car, but she was not allowed to. After leaving his mother's house, Trujillo pulled off the street into a field and told the victim that he wanted a "piece of something" for the ride. As he made advances toward her, she screamed. Trujillo prevented her from leaving the car by putting his legs on top of hers. Trujillo told Caldwell to get out of the car and "watch." Initially, Caldwell did not get out, and the victim asked him to stay. On Trujillo's second request that Caldwell leave the car, he did so.
 
 
 10
 Trujillo then removed the victim's shorts and underwear, pulled his own pants down to his knees, and tried to have sexual intercourse with the victim. The victim resisted, fighting and screaming. Trujillo sexually penetrated her once.
 
 
 11
 During this time, Caldwell stood nearby outside the car. Henri Mansour, whose property adjoined the field, heard the victim's screams. From his mobile home, he could see what he thought was either a rape or fight going on in the car. He also saw Caldwell[4] standing near the car. He testified that Caldwell would occasionally look at the car and then look around and that Caldwell appeared to be keeping watch. Mansour called the police. As the police pulled into the field, Caldwell yelled to Trujillo that the police had arrived. The policeman found Caldwell squatting in the weeds about fifteen feet from the car, and found Trujillo in the car with his pants still down around his knees. The victim was hysterical and naked from the waist down as she ran from the car to the policeman.
 
 
 12
 On this appeal, Caldwell does not contend that the victim was not kidnapped, but instead contends that there was no evidence that he aided or abetted the kidnapping. He argues that the evidence showed that he was a mere bystander and that there was no common criminal purpose or prearranged plan between Trujillo and him to kidnap the victim. He correctly notes that the victim testified that Caldwell never touched her. He also argues that the district court applied the wrong standard in concluding that his "mere presence" during the kidnapping and "moral paralysis" in not stopping it were sufficient evidence to support his conviction. Appellant's Br. at 12.
 
 
 13
 We agree with Caldwell that mere presence during a crime, without more, is insufficient evidence of encouraging the crime to support a conviction for aiding and abetting. See State v. Luna, 594 P.2d 340, 343 (N.M. Ct.App.1979). Here, however, there is much more than mere presence from which the jury could have inferred that Caldwell encouraged the kidnapping.
 
 
 14
 While still in the car, Caldwell was aware that Trujillo intended to restrain the victim and have sexual relations with her against her will. Caldwell testified that after the victim refused Trujillo's advances and Trujillo slapped her, he told Trujillo he did not want to be involved. Yet, Caldwell then complied with Trujillo's request that Caldwell get out of his own car despite the victim's asking him to stay. A jury could reasonably infer that his exiting his own car in these circumstances, leaving more room on the front seat of the car for Trujillo to attempt the rape, was meant to encourage Trujillo's actions. Moreover, Caldwell's actions outside the car--looking around as the victim screamed and Trujillo struggled with her and then warning of the police's approach--can reasonably be interpreted as keeping watch and thus further encouraging the kidnapping. See, e.g., United States v. Perez, 922 F.2d 782, 785 (11th Cir.), cert. denied, 111 S.Ct. 2840 (1991). The district court correctly concluded that there was sufficient evidence to support Caldwell's conviction.
 
 
 15
 The judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Caldwell also was convicted of several counts related to criminal sexual penetration of the woman, but these were reversed on direct appeal. He was not recharged with these counts
 
 
 [3]
 Caldwell raised several other issues in the district court regarding the use of false testimony, ineffective assistance of counsel, and due process violations resulting from being charged with multiple counts of criminal sexual penetration. The court found these issues to be without merit, and on appeal, Caldwell pursues only his claim that his conviction was not supported by sufficient evidence
 
 
 [4]
 Mansour testified that he saw a man standing outside the car and that he could not identify the man, but there is no question that the man was Caldwell