[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**May 25, 2005**
**THOMAS  K. KAHN**
**CLERK**

_____

No. 04-13549
Non-Argument Calendar

_____

D. C. Docket No. 03-20859-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARTHUR ADAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 25, 2005)**

Before BLACK, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Arthur Adams appeals his conviction for the following four counts:

conspiracy to import five kilograms or more of cocaine, a violation of 21 U.S.C. § 963; aiding and abetting the importation of five kilograms or more of cocaine, a violation of 21 U.S.C. § 952(a); conspiracy to possess with intent to distribute five kilograms or more of cocaine, a violation of 21 U.S.C. § 846; and aiding and abetting the possession with intent to distribute five kilograms or more of cocaine, a violation of 21 U.S.C. § 841 (a)(1). Adams argues that the evidence was insufficient to support his conviction on each count. He also challenges the district court's denial of his request for a mistrial after the government engaged in what he alleged to be the improper bolstering of a witness. Finally, Adams challenges the court's refusal to permit him to recross-examine a witness.

I.      Sufficiency of the evidence

On appeal, Adams argues that the evidence was legally insufficient to support his conviction on each of the four counts and that therefore the district court erred in denying his motion for judgment of acquittal. Adams asserts that he "played a significantly minor role in the predicate acts leading to the couriers' departure" and submits that "[t]he evidence does not otherwise connect [him] to a conspiracy to import cocaine." He contends that the fact that he paid a drug courier's rent and purchased each of the drug couriers' airline tickets and passports was "not conclusive of conspiracy." Instead, he points to others as the

2

prime movers of the conspiracy. Adams also argues that the evidence was insufficient to prove that he possessed cocaine with intent to distribute the drug.

"Whether the record contains sufficient evidence to support the jury's verdict is a question of law that we review *de novo*." *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997). "[T]he evidence is viewed in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *Id.*

To prove a defendant guilty of conspiracy, "'the government must prove beyond a reasonable doubt that: (1) a conspiracy existed; (2) appellants knew of the essential objectives of the conspiracy; and (3) appellants knowingly and voluntarily participated in the conspiracy.'" *Id.* at 1326 (citation omitted). "Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and collection of circumstances.'" *United States v. Perez-Tosta*, 36 F.3d 1552, 1557 (11th Cir. 1994) (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)). The government may establish a defendant's knowing participation in the conspiracy through proof of surrounding circumstances, such as acts the defendant committed that furthered the purpose of the conspiracy. *United States v. Matthews*, 168 F.3d 1234, 1245 (11th Cir. 1999).

Furthermore, even if there are many conspirators, a defendant's guilt can be established if his contact extends to only a few or even one of the co-conspirators. *United States v. Toler*, 144 F.3d 1423, 1427-28 (11th Cir. 1998). A defendant can be convicted even if his participation in the scheme is slight in comparison to that of other co-conspirators. *Id.* at 1428. Finally, testimony of a co-conspirator, even if uncorroborated, is sufficient to support a conviction so long as it is not, on its face, incredible or insubstantial. *United States v. Diaz*, 248 F.3d 1065, 1093-94 (11th Cir. 2001).

To prove aiding and abetting, the government must establish: (1) that the substantive offense took place; (2) that the defendant associated himself with the crime; and (3) that the defendant committed an act that furthered the crime. *United States v. Camargo-Vergara*, 57 F.3d 993, 1001 (11th Cir. 1995). "Aiding and abetting encompasses activities intended to ensure the success of the underlying substantive crime. . . ." *United States v. Perez*, 922 F.2d 782, 786 (11th Cir. 1991).

The elements of importation of cocaine are the knowing or intentional importation of cocaine into the United States from anyplace outside thereof. *United States v. Ballard*, 586 F.2d 1060, 1065, n.7 (5th Cir. 1978). Likewise, the elements of possession with intent to distribute cocaine are the knowing or

4

intentional possession of cocaine with the intention to distribute the drug. *Id.* at 1065, n.8. To prove possession with intent to distribute cocaine, the government must prove both possession and an intent to distribute. *United States v. Bain*, 736 F.2d 1480, 1486-87 (11th Cir. 1984). Possession may be actual or constructive and may be proved by circumstantial evidence. *Id.* at 1487. An intent to distribute can be inferred from drug quantity. *Id.* at 1486.

Despite Adams' arguments to the contrary, there was sufficient evidence to support his conviction on each of the four counts. The evidence presented at trial demonstrated that Adams did not merely join, but initiated, the conspiracy that lead to the importation and possession of cocaine. Adams performed several overt acts, which were revealed through testimony at trial, in furtherance of the conspiracy. For example, codefendant Bilal Ansari testified that Adams solicited Ansari to find women to work as cocaine couriers from Guyana. Further testimony revealed that Adams offered to pay the drug couriers money, thereby motivating the couriers to participate and assist in the conspiracy. He also supplied airline tickets and passports for the couriers as further inducement to participate in the conspiracy.

Although the evidence in the record is not explicit, a reasonable jury could infer that Adams supplied the contacts in Guyana who provided the couriers with

cocaine, or that he was a conduit of information that ultimately reached the suppliers. The fact that Adams never physically possessed any cocaine is irrelevant to the possession-related counts because he assisted the couriers in their obtaining physical possession of cocaine. Accordingly, the evidence was sufficient to establish that Adams conspired to import and possess cocaine with the intent to distribute it and that he aided and abetted the importation and possession of cocaine with the intent to distribute the drug.

II.    Bolstering the credibility of a witness

Adams further argues that the district court improperly permitted the government to bolster or vouch for one of its witnesses. In particular, Adams argues that the prosecutor bolstered or vouched for the credibility of Mohammed Alauddin during a series of questions regarding the name of the person to whom Alauddin sent money orders. Adams submits that the district court should have granted his requested mistrial because the prosecutor indicated a personal belief in Alauddin's credibility.

"The test for whether a witness has been improperly bolstered is 'whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility.'" *United States v. Knowles*, 66 F.3d 1146, 1161 (11th Cir. 1995) (citation omitted). "[T]his test may be satisfied in two ways:

First, the prosecution may place the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity. Secondly, a prosecutor may implicitly vouch for the witness' veracity by indicating that information not presented to the jury supports the testimony." *Id.*

The government's questioning of Mohammed Alauddin did not violate either prong of this test and does not constitute improper bolstering. During his cross-examination of Alauddin, Adams challenged Alauddin's credibility by attempting to imply that the government had worked with Alauddin to manufacture his testimony that he was told to send Western Union money orders to someone named "Arthur Adams." The portion of the government's redirect examination at issue here involved nothing more than the government's legitimate attempt to rehabilitate Alauddin by asking Alauddin to explain the process by which his memory of Adam's name was refreshed. Moreover, the prosecutor never issued a personal assurance regarding Alauddin's credibility. No reasonable jury could believe that this line of questioning put the prestige of the government behind the witness or indicated that the prosecutor was implying that there was evidence beyond what was presented to the jury to support the witness' testimony. Accordingly, the district court did not err in refusing to exclude this evidence and in denying Adams' request for mistrial.

7

III. Denial of recross-examination

Finally, Adams argues that the district court erred when it prohibited him from recross-examination of Bilal Ansari concerning Ansari's tax problems, which were first revealed during the government's redirect examination of Ansari. Adams contends that this prevented him from demonstrating the possible bias of the witness.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Accordingly, "[t]he defendant must be permitted sufficient cross-examination to allow a jury to adequately assess the witness' credibility. . . ." *United States v. Ross*, 33 F.3d 1507, 1517 (11th Cir. 1994). However, "a defendant has no constitutional right to recross-examination." *Id.* at 1518. "A defendant nonetheless does have a limited right to recross-examination where a new matter is brought out on redirect examination." *Id.* "When material new matters are brought out on redirect examination, the Confrontation Clause of the Sixth Amendment *mandates* that the opposing party be given the right of recross-examination on those new matters." *Id.* (citation and quotation omitted).

Ansari's testimony during redirect examination that his financial troubles were tax-related does not qualify as a new, material matter that warrants granting

8

Adams the right of recross-examination. Ansari previously testified as to his financial problems during both the government's direct examination and Adams' initial cross-examination of him. However, during Adams' initial cross-examination of Ansari, Adams failed to inquire as to the specifics of those financial problems. The fact that Ansari's financial problems were tax-related was not a new matter brought forth during redirect examination. Rather, it was a minor detail related to a matter already disclosed that Adams failed to explore further during the initial cross-examination. Accordingly, the district court did not err in denying Adams the opportunity to recross-examine Ansari.

## IV. Conclusion

Upon review of the record and consideration of the briefs of the parties, we discern no reversible error. The evidence presented at trial was sufficient to establish that Adams conspired to import and possess cocaine with the intent to distribute it and took overt acts manifesting such intent. Those overt acts demonstrated that Adams aided and abetted the importation and possession of cocaine with the intent to distribute the drug. The government did not improperly bolster Alauddin's credibility, but simply rehabilitated him following attacks on his credibility and assertions that evidence had been fabricated. Finally, the district court did not err in denying the recross-examination of Ansari concerning

9

a non-material matter that Adams could have questioned Ansari about during his original cross-examination.  Accordingly, we affirm Adams' convictions.

**AFFIRMED.**