[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11186
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 16, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00412-CR-20-CAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN DENNIS CHAPMAN,
RIGOBERTO SANCHEZ,
a.k.a. Rigo,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(December 16, 2009)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

John Chapman and Rigoberto Sanchez appeal their convictions for conspiracy to possess with intent to distribute at least 5 kilograms of cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), 846, and Sanchez appeals his conviction for possession with intent to distribute at least 5 kilograms of cocaine, id. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. § 2. Chapman also appeals his conviction for conspiracy to launder money. Id. § 1956(h). Chapman and Sanchez argue that there is insufficient evidence to support their convictions, they were entitled to reductions of their sentences for their minor roles in the conspiracy and their acceptance of responsibility, and their sentences are unreasonable. Chapman also argues that his sentence is unconstitutional. Sanchez argues that the government failed to prove that he participated in a single conspiracy and the district court erred in admitting evidence from expert witnesses. We affirm.

## I. BACKGROUND

We divide our discussion of the background into three parts. First, we discuss the investigation that led to the charges against Chapman and Sanchez. Next, we discuss their trial. Last, we discuss Chapman's posttrial motion, objections to the presentence investigation reports, and the sentences imposed.

*A. The Investigation and Charges Against Chapman and Sanchez*

Between April and December 2007, agents of the Drug Enforcement Agency

2

investigated a Mexican organization that trafficked in cocaine. Agents learned that, after the drugs entered the United States, the cocaine was transported to houses in Atlanta, Georgia, in vehicles or tractor trailer trucks of Palmer Trucking Line, a company owned by Troy Palmer and that employed Chapman as a driver. Agents intercepted telephone calls in which Ramon Madrigal stated that he had transported cocaine to an individual named Compadre in Atlanta, Georgia. Compadre was later identified as Ramiro Campuzano-Velasco. Agents learned that Campuzano-Velasco supervised the Atlanta operation, of which Sanchez and Chapman were members.

On October 18, 2007, federal agents intercepted telephone calls that the Atlanta operation planned to transport $300,000. The agents overheard Campuzano-Velasco direct Sanchez to deliver a duffle bag containing cash to the driver of a tractor trailer truck. After agents observed the exchange, they stopped the truck and seized $350,000.

Several days later, federal agents intercepted several telephone calls arranging for Campuzano-Velasco and Sanchez to receive 45 kilograms of cocaine. Agents videotaped Campuzano-Velasco and Sanchez accepting two large duffle bags from Chapman and giving one duffle bag to Chapman. The agents later intercepted a telephone call in which Madrigal explained to Campuzano-Velasco

3

that the duffle bag given to Chapman contained payment for the cocaine.

In November 2007, federal agents collected other evidence about Sanchez's activities. Agents intercepted two telephone calls in which Campuzano-Velasco instructed Sanchez to collect packages of $100,000 and $40,000. On another occasion, agents tape recorded conversations between Campuzano-Velasco and other members of the conspiracy discussing Sanchez's receipt of 120 kilograms of cocaine and planning Sanchez's delivery of the cocaine for resale. On November 25, 2007, agents recorded conversations between Campuzano-Velasco and Sanchez about the location of a house where Sanchez was to accept a delivery of 100 kilograms of cocaine. The next day, agents seized 99 kilograms of cocaine discovered inside a tractor trailer truck parked outside the house.

Chapman, Sanchez, and 21 other members of the conspiracy were charged in an eleven count indictment for conspiracy and drug crimes. Chapman was indicted for three crimes: conspiracy to possess with intent to distribute at least 5 kilograms of cocaine between April 2007 and December 6, 2007, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), 846; possession of at least 5 kilograms of cocaine on October 23, 2007, id. §§ 841(a)(1), (b)(1)(A)(ii)(III); 18 U.S.C. § 2; and conspiracy to launder money, id. § 1956(h). Sanchez was indicted for five crimes: conspiracy to distribute at least 5 kilograms of cocaine between April 2007 and December 6,

2007, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), 846; two counts of possession with intent to distribute cocaine on October 23 and November 26, 2007, id. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. § 2; conspiracy to launder money, id. § 1956(h); and laundering money, id. § 1956(a)(2)(A). Both men pleaded not guilty to the charges. The government later moved to enhance Chapman's sentence based on his two prior felony convictions in California and Iowa for the distribution and possession of methamphetamine.

*B. The Trial and Chapman's Posttrial Motion*

The morning of trial, Sanchez entered a change of plea to guilty to conspiracy to launder money and laundering money, 18 U.S.C. §§ 2, 1956(a)(2)(A), 1956(h), and the government stated it would try Sanchez for his drug charges. During a hearing in camera, Sanchez stated that he wanted to plead guilty to his drug charges, but he vacillated about whether he committed the crimes. The district court accepted Sanchez's pleas of guilty only to the crimes of conspiracy to launder and laundering money.

At trial, Daniel Titus of the Drug Enforcement Agency testified about how Madrigal and Campuzano-Velasco established an Atlanta base of operations to receive cocaine transported from Mexico. Titus explained that Madrigal, Campuzano-Velasco, and other members of the conspiracy coordinated and

5

monitored how cocaine was imported through California and Texas, distributed to customers, and proceeds were packaged and transported to Mexico. Titus also explained how federal agents intercepted telephone calls between Madrigal and Campuzano-Velasco that led to seizures of 50 kilograms of cocaine on August 18, 2007, and 89 kilograms of cocaine on August 22, 2007. Sanchez objected to evidence about crimes that occurred before he joined the conspiracy, but the district court overruled the objection.

Palmer testified about Chapman's knowledge of the conspiracy. Palmer testified that, after he was apprehended transporting marijuana, Chapman retrieved Palmer's truck. Palmer stated that he "assumed" he had told Chapman that he was transporting drugs, and Palmer testified that he had told Chapman the shipments of money he had transported were proceeds of drug transactions.

Campuzano-Velasco implicated Sanchez in the conspiracy. Campuzano-Velasco testified that in September 2007 his brother and Sanchez joined the drug operation and, the next month, Sanchez transported two shipments of cocaine weighing 62 kilograms and 45 kilograms. Campuzano-Velasco watched a videotape and identified Sanchez as accepting suitcases that contained cocaine. Campuzano-Velasco testified that on November 25, 2007, Sanchez failed to obtain 100 kilograms of cocaine because police were at the house where a driver of a

6

tractor trailer truck was to deliver the cocaine. Campuzano-Velasco explained that he and Sanchez had planned to obtain the cocaine the next day, but police seized the truck containing the cocaine.

Before two forensic chemists testified, Sanchez objected to the admission of 200 copies of bench notes and charts that the government had provided that morning. Sanchez argued that the late disclosure interfered with his ability to cross-examine the chemists or call rebuttal witnesses, and the government responded that Sanchez could have prepared his defense using the chemists' curriculum vitae and summaries of their proposed testimonies. The district court overruled Sanchez's objection.

The chemists testified about the weight of cocaine seized by police on three different dates: on August 18, 2007, the cocaine weighed 50.04 kilograms; on August 22, 2007, the cocaine weighed 88.37 kilograms; and on November 26, 2007, the cocaine weighed 99.3 kilograms. Sanchez cross-examined the chemists about whether their testing complied with Agency protocols and whether the machines used to test the cocaine were calibrated properly.

Both Chapman and Sanchez moved for a judgment of acquittal. Chapman argued the evidence was insufficient to submit the charges to the jury. Sanchez argued that the government had introduced irrelevant and prejudicial evidence

about drug seizures that had occurred before Sanchez joined the conspiracy and the government had failed to prove that on November 26, 2007, Sanchez had possessed with the intent to distribute cocaine. The district court denied Chapman's and Sanchez's motions.

Sanchez requested the district court instruct the jury about multiple conspiracies. Sanchez argued that his offenses involved separate conspiracies, and the government responded that Sanchez committed his crimes during a single conspiracy. The district court found that "it is really all one conspiracy involving drugs and money laundering" and denied Sanchez's motion.

The jury found Chapman and Sanchez guilty of conspiracy to possess and distribute at least 5 kilograms of cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), 846, but not guilty of possession with intent to distribute cocaine on October 23, 2007, id. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. § 2. The jury also found Chapman guilty of laundering money, id. § 2, 1956(a)(2)(A), and the jury found Sanchez guilty of possession with intent to distribute cocaine on November 26, 2007, id. § 2; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II).

### C. Posttrial Proceedings

Chapman challenged the sufficiency of the evidence a second time in a written motion for a judgment of acquittal. Chapman argued that the government

had presented conflicting evidence of his guilt and the jury had acquitted him of possessing cocaine in spite of a videotape that depicted Chapman participating in the transaction. The district court denied the motion.

Chapman objected to his presentence investigation report on four grounds. First, Chapman objected to the calculation of his base offense level of 34, United States Sentencing Guideline §§ 2D1.1(c)(3), 2S1.1(a)(1) (Nov. 2008), and he argued that he was not responsible for 45 kilograms of cocaine. Second, Chapman argued that he was entitled to reductions for his minor role in the conspiracy, id. § 3B1.2(b), and his acceptance of responsibility, id. § 3E1.1. Third, Chapman argued that his treatment as a career criminal, id. § 4B1.1, violated his rights to due process and equal protection because the convictions were stale and his sentence of life imprisonment was cruel and unusual punishment under the Eighth Amendment. Fourth, Chapman requested a downward departure based on the sentences imposed on his codefendants.

The district court overruled Chapman's objections to the presentence report. The district court found that Chapman was responsible for 45 kilograms of cocaine and his prior convictions were not stale. The district court rejected Chapman's challenge to his classification as a career criminal and requests for reductions based on his minor role and acceptance of responsibility. The court sentenced Chapman

9

to a mandatory sentence of life imprisonment for conspiring to distribute cocaine, a concurrent sentence of 240 months of imprisonment for conspiring to launder money, and 10 years of supervised release.

Sanchez objected to his presentence report on three grounds. First, Sanchez requested a reduction for his minor role in the conspiracy on the grounds that he lacked decision-making authority and served as a worker and driver in the cocaine operation. U.S.S.G. § 3B1.2(b). Second, Sanchez requested a reduction for his acceptance of responsibility about his involvement in laundering money. Id. § 3E1.1. Third, Sanchez requested a downward departure based on the sentences of his codefendants.

The district court overruled Sanchez's arguments. The court ruled that Sanchez was not entitled to a minor role reduction because Sanchez "was a great soldier" in the conspiracy and served as "some kind of lieutenant in the organization." The court also ruled that Sanchez was not entitled to a reduction for acceptance of responsibility because the government introduced "overwhelming" evidence that Sanchez committed drug offenses, but he had denied guilt and was not "fully open, truthful, and remorseful in a such a way that he would receive [the] adjustment." The district court sentenced Sanchez to three concurrent terms of 292 months of imprisonment for his two drug offenses and conspiring to launder

10

money, a concurrent term of 240 months of imprisonment for laundering money, and five years of supervised release.

## II. STANDARDS OF REVIEW

We apply three standards of review in this appeal. We review de novo the denial of a judgment of acquittal, and we construe the evidence in the light most favorable to the government. United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007). We review evidentiary rulings for an abuse of discretion. United States v. Kennard, 472 F.3d 851, 854 (11th Cir. 2006). The determination of the defendant's role in the offense is a finding of fact reviewed for clear error. United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir. 1999). We review the reasonableness of a sentence for abuse of discretion. Gall v. United States, 552 U.S. 38, 46, 128 S. Ct. 586, 594 (2007).

## III. DISCUSSION

Chapman and Sanchez present several arguments for our consideration. All fail. We address each argument in turn.

*A. Chapman Has Abandoned His Challenge To the Sufficiency of the Evidence.*

Chapman contends that the government failed to prove that he was guilty of conspiring to distribute of cocaine and launder money, but he has abandoned these arguments. Rule of Appellate Procedure 28(a)(9)(A) requires an appellant to

11

include in his argument his "contentions and reasons for them, with citations to the authorities and parts of the record on which [he] relies." Chapman's argument consists of three sentences in which he asserts he moved for an acquittal and "[t]he gravaman of [his] motion [was] that the evidence [was] insufficient to sustain conviction." Because Chapman neglected to provide any meaningful discussion of the evidence, we consider the argument abandoned. See Singh v. U.S. Att'y Gen., 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.").

*B. Sufficient Evidence Supports Sanchez's Convictions.*

Sanchez argues there is insufficient evidence that he conspired to distribute cocaine and launder money or that, on November 26, 2007, he was in possession of cocaine, but we disagree. Evidence established that Sanchez joined the conspiracy with Campuzano-Velasco's brother and, acting under the direction of Campuzano-Velasco and other coconspirators, Sanchez transported multiple bundles of drugs and cash packaged to avoid the detection of law enforcement. See United States v. Calderon, 127 F.3d 1314, 1326–27 (11th Cir. 1997); United States v. Seher, 562 F.3d 1344, 1365 (11th Cir. 2009). Evidence also established that on November 26, 2007, Sanchez aided and abetted coconspirators in the distribution chain by

12

attempting a second time to obtain a shipment of cocaine.  See United States v. Perez, 922 F.2d 782, 785 (11th Cir. 1991).  The district court did not err by denying Sanchez's motions for judgment of acquittal.

*C. The Evidence Established That Sanchez's Crimes Were Committed During a Single Conspiracy.*

Sanchez argues that the evidence established multiple conspiracies instead of the single conspiracy charged in the indictment.  Sanchez argues there was a misjoinder of charges and a variance between his indictment and the evidence, which he contends established that members of the drug organization formed multiple conspiracies to distribute drugs and launder money.  Sanchez also argues that the district court admitted irrelevant and extraneous evidence.  These arguments fail.

The record establishes that Sanchez participated in a single conspiracy.  The government introduced evidence consistent with the indictment that Sanchez and his codefendants participated in a conspiracy involving separate drug and money laundering transactions.  See United States v. Seher, 62 F.3d 1344, 1366 (11th Cir. 2009).  Testimony established that Sanchez, Campuzano-Velasco, and other coconspirators coordinated the transportation of cocaine to Atlanta, Georgia, and proceeds of drug sales to Mexico.  See United States v. Edouard, 485 F.3d 1324, 1347–49 (11th Cir. 2007); United States v. Calderon, 127 F.3d 1314, 1327 (11th

13

Cir. 1997). Sanchez assisted Campuzano-Velasco in the Atlanta operation and he participated in a substantial number of drug and money transactions to achieve objectives of the conspiracy. The government introduced evidence about prior crimes by coconspirators to assist the jury in understanding the scope of, and Sanchez's role in, the operation. See Edouard, 485 F.3d at 1344, 1347. Sanchez cannot argue that he was surprised by that evidence because the indictment charged that the conspiracy formed in April 2007, nor can he argue that the jury was confused by the evidence because it found Sanchez guilty of conspiracy and acquitted him of an underlying possession crime. See United States v. LeQuire, 943 F.2d 1554, 1561 (11th Cir. 1991).

*D. The District Court Did Not Abuse Its Discretion in Admitting Expert Testimony.*

Sanchez argues that his conviction should be reversed because the government waited until the morning of trial to disclose reports of its expert witnesses, but this argument fails. We will reverse the decision of a district court about evidentiary matters "'only if such a violation prejudices a defendant's substantial rights,'" United States v. Chastain, 198 F.3d 1338, 1348 (11th Cir. 1999) (quoting United States v. Perez-Garcia, 904 F.2d 1534,1546 (11th Cir. 1990)), and Sanchez cannot establish that he was prejudiced by the late disclosure. Although Sanchez complains the timing affected his ability to prepare a defense,

14

Sanchez questioned the chemists about compliance with testing protocols, and he fails to identify any data or irregularity in the reports that he could have used to challenge the evidence or the experts' conclusions. The district court offered Sanchez extra time to prepare for cross-examination, but Sanchez declined that offer. The district court did not abuse its discretion by admitting the expert testimony.

*E. Sanchez Was Not Entitled To Reductions for a Minor Role or Acceptance of Responsibility.*

Sanchez argues that he was entitled to reductions for his minor role as a courier and his acceptance of responsibility about laundering money, but we disagree. Even if Sanchez was not a leader of the conspiracy, he did not play a minor role. See U.S.S.G. § 3B1.2 cmt. n.5. Within one month of joining the conspiracy, Sanchez was entrusted to transport large amounts of cocaine and cash, and he handled at least 325 kilograms of cocaine. Sanchez also never accepted responsibility for his drug crimes. Id. § 3E1.1(a). Although Sanchez stated before trial that he desired to plead guilty to his drug charges, he refused to admit he had transported drugs, and at trial he challenged the evidence about those crimes. See United States v. Williams, 408 F.3d 745, 756 (11th Cir. 2005). The district court did not clearly err by finding that Sanchez did not qualify for reductions in his sentence.

*F. Sanchez's Sentence is Reasonable.*

Sanchez argues that his sentence is unreasonable, but we disagree. The district court considered the sentencing factors and determined that Sanchez's conduct warranted a sentence of 292 months of imprisonment. Although Sanchez contends that he was entitled to a sentence equivalent to codefendants who had pleaded guilty, "defendants who cooperate with the government and enter a written plea agreement are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial." United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009). The district court did not abuse its discretion by sentencing Sanchez to a term at the low end of the guidelines.

*G. The District Court Did Not Err When It Sentenced Chapman to Imprisonment for Life.*

Chapman challenges his sentence to imprisonment for life on three grounds. First, Chapman argues that his enhanced sentence violates his rights to due process and equal protection and constitutes cruel and unusual punishment in violation of the Eighth Amendment. Second, Chapman argues that his sentence is unreasonable because the court failed to consider the sentences imposed on his codefendants or other sentencing factors. Third, Chapman argues that he should have received reductions for his minor role in the conspiracy and his acceptance of responsibility. These arguments fail.

16

The district court was required to sentence Chapman to imprisonment for life. Chapman concedes that his argument that his mandatory minimum of life in prison violates the Eighth Amendment and the Due Process Clause is foreclosed by our precedents. See United States v. Willis, 956 F.2d 248, 251 (11th Cir. 1992). "[A] district court [also] is not authorized to sentence a defendant below the statutory mandatory minimum unless the government filed a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 or the defendant falls within the safety-valve of 18 U.S.C. § 3553(f)." United States v. Castaing-Sosa, 530 F.3d 1358, 1360–61 (11th Cir. 2008). Because Chapman faced a mandatory minimum sentence, any error in failing to grant a reduction for his minor role or acceptance of responsibility was harmless. The district court did not err when it sentenced Chapman.

## IV. CONCLUSION

The convictions and sentences of Chapman and Sanchez are **AFFIRMED**.