# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman First Class JEREMY D. BURK
### United States Air Force

## ACM 38455

## 02 April 2015

Sentence adjudged 7 May 2013 by GCM convened at Offutt Air Force Base, Nebraska. Military Judge: Natalie D. Richardson.

Approved Sentence: Bad-conduct discharge, confinement for 18 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Nicholas D. Carter.

Appellate Counsel for the United States: Captain Richard J. Schrider and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

ALLRED, Chief Judge:

A general court-martial composed of officer and enlisted members found the appellant, contrary to his pleas, guilty of one specification of spoiling nonmilitary property and three specifications of assault consummated by battery, in violation of Articles 109 and 128, UCMJ, 10 U.S.C. §§ 909, 928.[1] The adjudged and approved

---

[1] The appellant was found not guilty of damaging nonmilitary property, rape, aggravated assault, abusing an animal, and communicating a threat, in violation of Articles 109, 120, 128, and 134, UCMJ, 10 U.S.C. §§ 909, 920, 928, 934. One of the three assault consummated by battery offenses of which the appellant was convicted was the lesser included offense of a specification alleging aggravated assault.

sentence consisted of a bad-conduct discharge, 18 months' confinement, and reduction to E-1.

Before us, the appellant argues (1) the evidence is legally and factually insufficient to sustain his conviction of spoiling nonmilitary property; (2) that his conviction of spoiling nonmilitary property must be set aside because of inconsistent verdicts; (3) the military judge abused her discretion by not providing the members a properly tailored sentence instruction; (4) errors in trial counsel's sentencing argument require sentencing relief; (5) the appellant's adjudged sentence is too severe; (6) a new action from the convening authority is required because of unlawful command influence; (7) the record of trial is incomplete because it does not include the entire addendum to the recommendation of the staff judge advocate recommendation (SJAR); and (8) relief is warranted because of inappropriate post-trial delay. Finding no error prejudicial to the substantial rights of the appellant, we affirm.

*Background*

The appellant and his wife, a Senior Airman, had a turbulent relationship. When the appellant was angry, he would punch holes in doors and walls and do other damage to their leased government housing. On multiple occasions, he physically assaulted his wife. This behavior resulted in the appellant's being convicted of three specifications of assault consummated by a battery, covering three separate instances. He was also convicted of willfully spoiling certain nonmilitary property, namely the walls and doors within his residence. Further facts relevant to each assignment of error are discussed below.

*I. Legal and Factual Sufficiency*

The appellant contends his conviction for willfully spoiling the property within his leased residence is not factually and legally sufficient because there is no evidence the property was permanently damaged. He also contends the evidence does not support the finding that the value of any destroyed property exceeded $500.00. We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*,57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,

[we are] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

In Specification 1 of the Additional Charge, the appellant was charged with "willfully spoil[ing]" certain property. At trial, the military judge properly instructed the members regarding the elements and definition of spoiling nonmilitary property as follows:

> One, that at or near Bellevue, Nebraska, between on or about 27 December 2010 and on or about 27 November 2012, the Accused willfully spoiled by punching certain property, namely the walls and doors within 2808 March Circle, Bellevue Nebraska;
>
> Two, that the property spoiled was the property of America First Communities LLC; and
>
> Three, that the property was of a value of more than $500.00, or some lesser amount in which case the findings should be in the lesser amount.
>
> . . . .
>
> Spoil means to wrongfully destroy or permanently damage property such as buildings, structures, fences, trees. Willfully means intentionally or on purpose.

*See Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 33.b. and c.(1). (2012 ed.).

It was undisputed at trial that the appellant did considerable damage to the housing unit where he resided with his wife. She testified that the appellant punched a "lot of holes in walls and doors." The appellant admitted to others that, when upset, he did damage to doors and walls where he lived. Further testimony and photographs established that the appellant caused large holes and cracks to a sliding closet door and to the doors of several rooms, and that he split the door of an oak vanity by tearing it from its hinges. The appellant also cracked a door jamb, broke holes in sheet rock, and did substantial further damage throughout the dwelling.

At the time the appellant and his wife vacated their housing, the property manager charged them $1,148.38 to restore their quarters. Itemized in the bill he presented was

the replacement of two doors, at a cost of $95.00 apiece. Also itemized was the replacement of three other hinged doors, along with a sliding closet door, an oak vanity, and two window blinds, at a total cost $718.38. A minor portion of the overall $1,148.38 estimate appears to have involved damage caused by a pet, as well as certain damage by the appellant amounting to less than actual destruction of the property. The bill from the property manager, however, appears to be reasonable, and we are convinced the appellant "spoiled" property of a value greater than $500.00. *Cf. United States v. Clark*, NMCCA 200101963 (N.M. Ct. Crim. App. 11 February 2005) (holding the accused providently pleaded guilty to spoiling nonmilitary property by ruining the carpet, hardwood floors, and linoleum floors in the house he was leasing).

Considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt that the appellant is guilty of spoiling property of a value more than $500.00.

## II. Article 109, UCMJ, Verdict

The offense of wasting, spoiling or destroying nonmilitary property occurs when one "willfully or recklessly wastes, spoils, or otherwise willfully and wrongfully destroys or damages any property other than military property of the United States." Article 109, UCMJ. The *Manual* lists two separate offenses under that Article: (1) wasting or spoiling certain real (nonmilitary) property in a reckless or willful manner, and (2) willfully and wrongfully destroying or damaging certain personal (nonmilitary) property. *MCM*, Part IV, ¶ 33.b.(1) and (2).

Here, the appellant was charged, in the alternative, with two offenses under Article 109, UCMJ. Specification 1 of the Additional Charge alleged that the appellant did "willfully spoil" nonmilitary property.[2] Specification 2 of the Additional Charge alleged that he did "willfully and wrongfully damage" the same nonmilitary property. The elements were also identical relative to the owner of this property, the date range of the incidents, and the actions of the appellant. The charge sheet expressly stated that the two specifications were "charged in the alternative," but the members were not advised of that fact during instructions. During their deliberations, however, the members asked the military judge for clarification on the relationship between the two specifications. After consulting with the parties, the military judge advised the members they were required to make a determination for both specifications. The court members ultimately found the appellant guilty of Specification 1 (willfully spoiling the property), and not guilty of Specification 2 of the Additional Charge (willfully and wrongfully damaging the

---

[2] Unlike the elements listed in the 2012 edition of the *Manual* and Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, the military judge's instructions did not use the words "real" and "personal" property in describing these offenses.

property). The appellant contends we must set aside the spoliation specification because the verdicts are inconsistent.

As we have recently noted, inconsistent verdicts are not a valid reason to challenge a conviction. *See United States v. Cooks*, ACM 38426 (A.F. Ct. Crim. App. 13 January 2014). The appellant acknowledges that inconsistency of verdicts is not normally grounds for reversing a finding of guilty. He cites, however, *United States v. Stewart*, 71 M.J. 38 (C.A.A.F. 2012), for the proposition that his conviction of Specification 1, spoiling nonmilitary property, cannot stand in the present case. In *Stewart*, the accused faced two specifications of aggravated sexual assault, both alleging violations of Article 120(c)(2), UCMJ, 10 U.S.C. § 920(c)(2). One specification in that case alleged that Stewart committed the act while the victim was "substantially incapacitated," while a second specification alleged that the act occurred while the victim was "substantially incapable" of declining participation in the sexual act. In his instructions to the members, the military judge defined substantial incapacity and substantial incapability using identical definitions. Our superior court found that, in this unusual case, "the members were confronted with two offenses that, as instructed, alleged exactly the same offense," thus creating "the framework for a potential double jeopardy violation." *Stewart*, 71 M.J. at 42. As a result, Stewart's acquittal of one specification required that his conviction of the legally-identical second specification be set aside. The court emphasized, however, that its ruling in *Stewart* arose from the "unique circumstances of this case," and did not contradict the general rule that "consistency in a verdict is not necessary." *Id.* at 43.

In the case before us, although there was some overlap in the specifications and the elements, they are different in one critical regard—the nature of the damage. In Specification 1, the appellant was charged with intentionally "spoiling" the property, defined as destroying or permanently damaging it. In Specification 2, the appellant was charged with intentionally "damaging" the property, defined as physically injuring it in any way. When the panel asked how the offenses related to each other, the military judge instructed them that the elements and definitions were slightly different and advised that the same acts by the appellant could satisfy the elements of both offenses. The panel ultimately concluded that the appellant destroyed or permanently damaged the property.

We recognize that in order to destroy or permanently damage ("spoil") the property, the appellant must have physically injured ("damaged") it in some way, and that the panel therefore could have convicted him of both offenses once the members concluded beyond a reasonable doubt that the appellant spoiled the property. However, we find this case does not involve the double jeopardy issue that arose in *Stewart*, as the two offenses did not allege exactly the same offense. Therefore, the appellant's reliance upon *Stewart* is misplaced.

Furthermore, in the present case, even if we assume the verdicts were inconsistent, it would not be grounds for granting relief. The relevant question is whether the conviction of spoiling nonmilitary property is factually and legally sufficient. *See United States v. Snipes*, 18 M.J. 172, 175 (C.M.A. 1984) (holding the appropriate action in such a situation is to review the court's finding to "determine whether it may legally stand"); *see also United States v. Commander*, 39 M.J. 972 (A.F.C.M.R. 1994) (applying the foregoing authority in determining that a finding need not be set aside due to inconsistency of verdicts). We have found, above, that it is.

*III. Instruction to the Members*

The aggregate maximum punishment for the offenses of which the appellant was convicted included a dishonorable discharge, confinement for 6 years and 6 months, forfeiture of all pay and allowances, and reduction to E-1. The appellant asked the military judge to tell the panel the maximum punishment authorized for each offense—namely that the spoliation of the nonmilitary property accounted for five years of that maximum confinement, while the three assault specifications each accounted for six months of that maximum.[3] The military judge declined to provide the requested itemization of punishments and instead instructed the members on the aggregated maximum punishment. The appellant now speculates the court members might have adjudged a lighter sentence had they known that less confinement was authorized for the offenses involving a person than for the offense involving property. He contends the military judge therefore erred in denying his requested instruction. We disagree.

At trial, counsel are entitled to request specific instructions, but substantial discretionary power is given to a military judge to decide what instructions the members ultimately receive. *United States v. Damatta-Olivera*, 37 M.J. 474, 478 (C.M.A. 1993) (citing *United States v. Smith*, 34 M.J. 200 (C.M.A. 1992); Rule for Courts-Martial (R.C.M.) 920(c), Discussion). We review the denial of a requested instruction for an abuse of discretion. *Id.* at 478; *United States v. Rasnick*, 58 M.J. 9, 10 (C.A.A.F. 2003). To determine if error exists, we apply a three-pronged test: whether "(1) the [requested instruction] is correct; (2) 'it is not substantially covered in the main [instruction]'; and (3) 'it is on such a vital point in the case that the failure to give it deprived [the appellant] of a defense or seriously impaired its effective presentation.'" *Damatta-Olivera*, 37 M.J. at 478 (quoting *United States v. Winborn*, 34 C.M.R. 57, 62 (C.M.A. 1963)); *United States v. Gibson*, 58 M.J. 1, 7 (C.A.A.F. 2003).

---

[3] The military judge noted on the record that the appellant raised this instructional issue during an out-of-court discussion pursuant to Rule for Courts-Martial 802. The appellant placed no further objection nor request for instruction on the record. The Government argues the appellant has failed to preserve this issue for appeal. For purposes of this appeal, however, we consider the request for this instruction to have been properly raised and preserved at trial.

The maximum punishment instruction provided to the court members was correct, both as to its form and its substance. R.C.M. 1005(e) requires that sentence instructions include a "statement of the maximum authorized punishment that may be adjudged." The Discussion to R.C.M. 1005(e) explains that "maximum punishment" means "the *total* permitted . . . for each separate offense of which the accused was convicted." (emphasis added). The appellant cites no authority for his contention that the military judge was required to deviate from this guidance. We find no abuse of discretion in the military judge's refusal to give the instruction requested by the appellant.

## *IV. Sentencing Argument*

The appellant argues that, either individually or collectively, the sentencing arguments of trial counsel amounted to error. The appellant also claims his trial defense counsel were ineffective for failing to object to the arguments in question.[4]

Because trial defense counsel failed to object to trial counsel's argument, we review the issue for plain error. *See United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007). "To prevail under a plain error analysis, [the appellant] must demonstrate that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right [of the appellant].'" *Erickson*, 65 M.J. at 223 (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

"A trial counsel is charged with being a zealous advocate for the Government." *United States v. Barrazamartinez*, 58 M.J. 173, 176 (C.A.A.F. 2003) (citing *United States v. Nelson*, 1 M.J. 235, 238 (C.M.A. 1975)). As a zealous advocate, trial counsel may "argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citing *United States v. Edwards*, 35 M.J. 351 (C.M.A. 1992)). During sentencing argument "trial counsel is at liberty to strike hard, but not foul, blows." *Baer*, 53 M.J. at 237. Trial counsel may not "seek unduly to inflame the passions or prejudices of the court members." *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983) (citing *United States v. Shamberger*, 1 M.J. 377 (C.M.A. 1976)).

The appellant claims that improper argument arose in three areas. First, he notes that trial counsel cited the appellant's yelling and verbal abuse of his spouse, as well as his violation of a lawful order. He contends these were inappropriate references to uncharged misconduct.

The appellant was ultimately convicted of three specifications of physical assault upon his wife and of destroying a large amount of nonmilitary property over a span of

---

[4] Trial defense counsel made one objection during sentencing argument, when trial counsel appeared to conflate a bad-conduct discharge with a decision to retain the appellant in the Air Force. That objection was sustained by the military judge and is not material to our present ruling.

nearly two years. Trial counsel opened his sentencing argument by stating, "It was always the same story: the Accused gets mad, in fact, he gets angry, and when he gets angry he snaps, and he chooses to commit crimes." Consistent with this theme, trial counsel made several references to evidence suggesting a pattern in which the appellant would become enraged and verbally abusive before physically assaulting his wife and destroying property. Trial counsel also noted that the appellant assaulted his wife after receiving an order to have no contact with her.

We find no impropriety in these arguments. Trial counsel's mention of facts and circumstances surrounding the assaults and destruction of property, based upon properly admitted evidence, was not erroneous. *See* R.C.M. 1001(f)(2) (stating that during sentencing the members may consider evidence properly introduced on the merits before findings). Likewise, it was not unreasonable for trial counsel to note that a no contact order had failed to deter this appellant from further assaulting his wife. *See* R.C.M. 1001(g) (noting that counsel may address specific deterrence in sentencing argument).

Second, the appellant complains that trial counsel: (1) recommended 22 months of confinement, contending that such a sentence would enhance both his wife's feeling of safety and her actual security in a way lesser measures had not; (2) urged that the members not "let him do this again"; and (3) argued that a bad-conduct discharge "will never again allow this Airman to beat another Airman." The appellant claims such argument enflamed the passions of the court members by threatening dire consequences if they did not adjudge a harsh sentence. We disagree.

It is well settled that trial counsel must not fan the members' fears by predicting calamities if they do not reach a certain verdict. *See United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011). That is, however, not what occurred in the present case. On its face, trial counsel's suggestion that a bad-conduct discharge would prevent the appellant from beating another Airman might seem an improper recommendation that the appellant be punitively discharged in order to remove him from the service. Viewing the comment in context, however, it is plain that trial counsel was advocating the legitimate ends of protecting society (including the appellant's wife) from the wrongdoer, deterring the wrongdoer, and preserving good order and discipline in the military.[5]

---

[5] Trial counsel's fuller argument was as follows:

> Members, a bad conduct discharge is also necessary, and it's necessary for deterrence. Specifically, a bad conduct discharge will never again allow this Airman to beat another Airman, especially when that Airman is his wife. It will also send a message to other Airmen that attacks, attacks on us, attacks on our fellow Airmen will not come from within. It's also necessary, members, for good order and discipline. It's necessary for good order and discipline that we know how to follow orders, that we know how to follow the law. The Accused knows how to do neither.

Examining the argument as a whole, we find that the allegedly inappropriate comments by trial counsel did no more than address well-recognized sentencing principles. Generally accepted sentencing philosophies include rehabilitation of the accused, punishment of the wrongdoer, protection of society from the wrongdoer, preservation of good order and discipline in the military, and deterrence of the wrongdoer and those who know of his or her sentence from committing the same or similar offenses. R.C.M. 1001(g).

Third, the appellant argues that trial counsel improperly commented on his right to remain silent. In *Edwards*, 35 M.J. at 355, our superior court stated:

> A servicemember is presumed innocent and has the right to plead not guilty to the criminal charges against him or her. Accordingly, a sentencing argument by trial counsel which comments upon an accused's exercise of his or her constitutionally protected rights is "beyond the bounds of fair comment."
>
> Generally, a guilty plea is a positive first step to rehabilitation and may be considered as a mitigating factor at sentencing. However, a plea of not guilty, standing alone, does not conversely carry with it a negative implication, capable of aggravating a sentence. This is particularly true where an accused also exercises his or her rights to remain silent.
>
> If "a proper foundation" is laid, "an accused's recalcitrance in refusing to admit his guilt after findings is, in a proper case, an appropriate factor for the members to consider in their sentencing deliberation on his rehabilitation potential." It may also be relevant as victim-impact evidence. As a general rule, the predicate foundation is that an accused has either testified or has made an unsworn statement and has either expressed no remorse or his expressions of remorse can be arguably construed as being shallow, artificial, or contrived. There may be other evidence in the record which gives rise to the inference that an accused is not remorseful. However, the inference may not be drawn from his failure to testify or from his pleas of not guilty.

(Citations omitted).

In the present case, the appellant made an unsworn statement which was arguably shallow, artificial, or contrived. After a series of apparently self-serving comments in which he conceded no wrongdoing, he stated,

> I know I am not perfect and God knows I am not perfect. But with His help I am at least one step closer to at least trying to be perfect. I know that you have found me guilty, but I want to say that I'm just a human being learning to walk on this earth like anyone and everyone else.

In specific reference to these comments in the appellant's unsworn statement, trial counsel argued, "He's still not accepting responsibility today, members." Contrary to the appellant's assertion that this was improper comment on his constitutionally protected rights, we find that trial counsel's argument steered well clear of the accused's right to plead not guilty or make the Government prove his guilt, and was within the bounds of proper argument outlined above.

Noting that his trial defense counsel did not object, the appellant alternatively casts this assignment of error as an ineffective assistance of counsel claim. Having found, however, that trial counsel did not make improper argument, we reject the appellant's assertion that his counsel were deficient. We find an ineffective assistance claim to be without merit. *See United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) ("[T]o prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice.").

## *V. Sentence Severity*

The appellant contends that his sentence is inappropriately severe. He cites character letters on his behalf and argues that he is an otherwise excellent Airman who simply found himself in a "bad relationship." He also refers to punishments in other courts-martial and urges that his sentence is too severe when compared to most cases involving assault.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

In exercising sentence appropriateness review, "[t]he Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which

sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). An appellant bears the burden of demonstrating that any cited cases are "closely related" to the appellant's case and the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Closely related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* If the appellant meets his or her burden to demonstrate closely related cases involve highly disparate sentences, the Government "must show that there is a rational basis for the disparity." *Id.*

In the present case, we have carefully considered the appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial. The appellant's destruction of property and physical attacks upon his spouse were serious offenses, repeated over time despite many efforts to deter his behavior. Ultimately, even a military no contact order failed to prove effective. The maximum punishment for the offenses of which the appellant was found guilty included a dishonorable discharge and 6 years and 6 months' confinement. We have no difficulty finding that the appellant's sentence, which includes 18 months' confinement and a bad-conduct discharge, is correct in law and fact and should be approved.

Likewise, having reviewed the matters submitted by the appellant and applying the standard set forth in *Lacy*, we find the appellant has failed to meet his burden of demonstrating that any cited cases are "closely related" to his case and that the sentences are "highly disparate." We reject this assignment of error.

*VI. Unlawful Command Influence*

The appellant alleges that apparent unlawful command influence so permeated the Air Force at the time of the post-trial processing of his case that it was impossible for him to receive a fair clemency consideration. As a remedy, the appellant urges that this court order new post-trial processing and action.

Article 37(a), UCMJ, 10 U.S.C. § 837(a) states in relevant part: "No person subject to this chapter may attempt to coerce or . . . influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case . . . ." The mere appearance of unlawful command influence may be "as devastating to the military justice system as the actual manipulation of any given trial." *United States v. Ayers*, 54 M.J. 85, 94–95 (C.A.A.F. 2000) (internal quotation marks and citation omitted). "Even if there was no actual unlawful command influence, there may be a question whether the influence of command placed an intolerable strain on public perception of the military justice system." *United States v. Lewis*, 63 M.J. 405, 415

(C.A.A.F. 2006) (citations and internal quotation marks omitted). "Whether the conduct of the [commander] in this case created an appearance of unlawful command influence is determined objectively." *Id*. Because the focus is on the perception of fairness as viewed through the eyes of a reasonable member of the public, "the appearance of unlawful command influence will exist where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *Id.*

Allegations of unlawful command influence are reviewed de novo. *United States v. Harvey*, 64 M.J. 13, 19 (C.A.A.F. 2006). Where unlawful command influence is first raised at the appellate level, the appellant "must show (1) facts which, if true, constitute unlawful command influence; (2) show that the proceedings were unfair; and (3) show that unlawful command influence was the cause of the unfairness." *United States v. Richter*, 51 M.J. 213, 224 (C.A.A.F. 1999) (quoting *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999)).

According to the appellant, fair proceedings in his case were not possible due to "the climate created by today's political environment." The appellant asserts, "During the trial and post-trial processing time, 12 AF/CC,[6] was pending nomination in the Senate for a promotion to Four-Star General. Similarly at the same time, General Helms's nomination was being held up [by the Senate] because of clemency which she granted an accused who was alleged to have committed a sexual assault." The appellant notes that the staff judge advocate had recommended a reduction from 18 to 14 months confinement but the convening authority nevertheless approved the sentence as adjudged. In the appellant's view, a reasonable member of the public would believe that the ongoing actions of the Senate would lead a convening authority (especially one who was pending promotion himself) to deny clemency, and thus apparent unlawful command influence is present.

The Government urges that general officer promotion status and other facts raised by the appellant are not properly before this court.[7] However, even if we assume that the facts are properly before us and that they are true, we do not find unlawful command influence in the present case. We find no evidence that the convening authority took action based upon anything but his own fair and independent judgment.

We have ourselves reviewed the entire record and find no facts which, if true, constitute unlawful command influence, no indication that the proceedings were unfair, and no evidence that unlawful command influence was the cause of any unfairness.

---

[6] The general court-martial convening authority in this case was the commander of Twelfth Air Force, then-Lieutenant General Robin Rand.

[7] The Government notes that these matters were not raised at trial and contends that their introduction on appeal fails to comply with our Rules of Court.

*See United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991) (explaining there must be more than "command influence in the air" to justify action by an appellate court).

## VII. Incomplete SJAR Addendum

Pursuant to R.C.M. 1106, the convening authority's staff judge advocate (SJA) prepared a written recommendation regarding the appellant's case. After serving the recommendation upon the appellant and the appellant's counsel and receiving clemency matters, the SJA prepared an addendum. The addendum included the SJA's recommendation that the convening authority approve only 14 months of the adjudged 18 months' confinement. The addendum indicates that a proposed action to that effect was attached. Ultimately, in a separate document, the convening authority approved the sentence as adjudged. The initial proposed action was not attached to the record of trial. The appellant asserts that the record of trial is therefore incomplete and that the omission prevents us from completing our review under Article 66(c), UCMJ.

In conducting our review under Article 66(c), UCMJ, we "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as [the court] finds correct in law and fact and determines, on the basis of the entire record, should be approved." For the purpose of reviewing the sentence under Article 66, UCMJ, the record includes matters submitted to the convening authority. *United States v. Hutchison*, 57 M.J. 231, 234 (C.A.A.F. 2002). We review completeness of a record of trial de novo. *United States v Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000). "Insubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *Id*. at 111.

In this case, although the SJAR addendum constitutes part of the record for our review of the sentence under Article 66, UCMJ, the omission of an attached draft action, not adopted by the convening authority, is insubstantial and does not render the record incomplete. There is no assertion that the convening authority action contained information not already part of the record in this case. Nor is there any evidence that the draft did anything more than capture the recommendation in the body of the addendum itself. The draft is of no legal effect until it is signed and becomes the action. The signed action, as revised by the convening authority, was included in the record. We find unpersuasive the appellant's argument that the draft action is somehow more revealing of the convening authority's intent than the final action. Since there is no evidence that the draft contained any information not captured elsewhere in the record, we deem its omission insubstantial. This assignment of error is without merit.

## VIII. Post-Trial Delay

The appellant's trial concluded on 7 May 2013, the convening authority signed the action 128 days later, and the case was docketed with this court 41 days after action. This exceeds both the 120-day sentence-to-action standard and the 30-day action-to-

docketing standard articulated in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The appellant asserts that these delays merit the award of meaningful relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), but does not specifically assert that he is entitled to relief under *Moreno*. Nonetheless, we consider the unreasonable delay under *Moreno* within the context of our Article 66, UCMJ, review.

We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006).

A presumption of unreasonable delay arises when the action of the convening authority is not taken within 120 days of the completion of trial and when the record of trial is not docketed within 30 days of that action. *Moreno*, 63 M.J. at 142. Because both initial post-trial stages violate these *Moreno* standards, the presumptively unreasonable delay triggers an analysis of the four factors enumerated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and adopted in *Moreno*, 63 M.J. at 135. Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005) (citing *Barker*, 407 U.S. at 530). Because the delay was presumptively unreasonable, we proceed to the remaining three factors.

The Government has offered no explanation for the delay in taking action in this case. Our superior court has observed that delay between action and docketing is "the least defensible" source of delay. *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990). We note, however, that the record in this fully litigated case is comprised of nine volumes including 1,294 pages of verbatim proceedings and almost 150 exhibits. While such a record is not unusually burdensome, this is not a case where assembly and forwarding was trivial. The Government has also offered no explanation for why the case was not docketed within 30 days of action. Accordingly, this factor weighs against the Government.

The record does not reflect a demand for speedy post-trial processing and appellate review in this case. However, "[t]he responsibility of the convening authority to complete post-trial processing in a timely fashion is not dependent upon a request to do so from the accused." *United States v. Bodkins*, 60 M.J. 322, 323–24 (C.A.A.F. 2004). Once the case was docketed, the appellant requested five enlargements of time, ultimately taking 330 days to file his assignments of error. The predominant basis for the enlargement requests appears to be appellate defense counsel's workload. The record reflects that appellant was consulted about the reasons for the delay. This factor is essentially neutral.

The appellant makes no claim of prejudice in this case, so we need not address the three-factor prejudice analysis framework set out in *Moreno*. This factor weighs against the appellant.

When there is no showing of prejudice under the fourth *Barker* factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Although the delay is presumptively unreasonable and unexplained, in the overall context of the appellate review of the case, it is comparatively small. Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

Additionally, we are empowered by Article 66(c), UCMJ, to grant sentence relief for excessive post-trial delay without a showing of actual prejudice. *Tardif*, 57 M.J. at 224; *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy-Marine Corps Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether such relief should be granted for post-trial delay. This list includes the length and reasons for the delay, the length and complexity of the record, the offenses involved, and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. As noted above, the length of time by which the processing of this case exceeded *Moreno* standards is comparatively small, only 19 days. The record is neither unusually small nor unusually large. The offenses are significant, including multiple violent battery specifications. Finally, although the processing of the case appears negligent in the absence of any explanation, we find no evidence of bad faith or gross negligence. While any excessive post-trial delay is cause for concern, we must view each delay in the context of the overall timely process of appellate review. We conclude under these circumstances that sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the approved findings and sentence are **AFFIRMED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38455